# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10862
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

WILBERTH MEDINA GARCIA,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

PER CURIAM:

A jury convicted Wilberth Medina Garcia of illegal reentry. Garcia now appeals his conviction, arguing that the district court erred by (1) permitting the government to bolster the credibility of its declarants improperly, (2) overruling Garcia's hearsay and Confrontation Clause objections to the government's evidence, and (3) denying Garcia's motion for a new trial predicated on the government's putative *Brady* violation. Finding the district court's rulings correct, we AFFIRM Garcia's conviction.

## BACKGROUND

Garcia, a Mexican citizen, entered the United States without inspection in 2002. On February 4, 2015, in Huntsville, Texas, an officer with the

No. 17-10862

Department of Homeland Security's Immigration and Customs Enforcement served Garcia with a Notice of Intent to Issue a Final Administrative Removal Order. This document stated that Garcia was deportable because of his conviction for an "aggravated felony." Garcia indicated on the form that he did not contest the allegations, would not apply for deferral of removal, and wished to be removed to Mexico. On February 9, an immigration official served a Final Administrative Removal Order on Garcia. This stated that Garcia's deportability was established by clear and convincing evidence and that he was to be removed from the United States to Mexico.

The same day, a warrant of removal was recorded, documenting Garcia's removal on foot through the Laredo, Texas port of entry. The warrant of removal states that it was filled out by the "immigration officer executing the warrant," and it contains a picture of Garcia, his right index fingerprint, and his signature. The warrant of removal also certifies that an immigration officer witnessed Garcia's removal to Mexico, and the form contains the witness's signature. The document also contains a section to be completed if an alien's departure is not actually witnessed, but this section is blank. Finally, the document contains a space for the signature of an immigration officer who subsequently "[v]erified" the departure. This space contains a signature with a line through it.

In August 2016, Garcia was booked into the Dallas County Jail. The following day, an ICE officer placed an immigration detainer on Garcia, and he was transferred into ICE's custody. On October 11, 2016, Garcia met with ICE Deportation Officer Frederick Sims. During this interview, Garcia admitted that he had illegally entered the United States around May 2016 near El Paso, Texas. Officer Sims checked immigration databases and determined that Garcia had not applied to be in the United States legally.

No. 17-10862

Officer Sims presented Garcia with a *Miranda* waiver.  This waiver recited the *Miranda* rights in Spanish and is typed out in the first person to indicate the signer's intent to waive those protections.  The typed form lists the date of waiver as October 11, 2016.  The form also contains two signatures of witnesses to the waiver.  Officer Sims signed the form, and listed the date as October 17.  Another officer signed the form and listed the date as October 19.  At trial, Officer Sims testified that Garcia signed the waiver on October 17 and not on October 11.

A federal grand jury indicted Garcia for illegally reentering the United States in violation of 8 U.S.C. § 1326, and Garcia proceeded to trial.  At trial, Officer Sims testified to his conversations with Garcia in October 2016 and stated that, based on his own review of ICE databases, Garcia had not sought permission to return to the United States.  Officer Noel Lee, a second deportation officer with ten years of experience, testified further about removal procedures.  Officer Lee explained the documents pertaining to Garcia's prior removal proceedings and the quality checks used to ensure that those documents contained accurate information.  The district court admitted these documents into evidence over Garcia's Confrontation Clause and hearsay objections.  A forensic expert also testified that the fingerprint on Garcia's warrant of removal was authentic.  Garcia produced no evidence and called no witnesses to testify that he had never been removed or that he had applied for readmission to the United States.  Garcia also objected to certain statements the prosecutor made during closing arguments, but the district court overruled these objections.

After the jury convicted Garcia of the illegal reentry, he filed a motion for a new trial, arguing that his *Brady* rights were violated by the government's failure to clarify the timing of his *Miranda* waiver.  The district court denied

3

No. 17-10862

Garcia's motion, and Garcia was ultimately sentenced to 22 months' imprisonment. He timely appealed.

## STANDARDS OF REVIEW

The propriety of a prosecutor's statements is reviewed *de novo*, but we review for an abuse of discretion whether those statements affected the defendant's substantial rights. *See United States v. McCann*, 613 F.3d 486, 494 (5th Cir. 2010). We review an alleged *Brady* violation *de novo*. *See United States v. Martin*, 431 F.3d 846, 850 (5th Cir. 2005). Whether the admission of objected-to evidence violates the hearsay doctrine is a mixed question: legal issues are reviewed *de novo*; factual determinations are reviewed for clear error. *See United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004). Alleged Confrontation Clause violations are reviewed *de novo* and subject to harmless error analysis. *See id.*

## DISCUSSION

### I.   Prosecutorial Misconduct Claim

Garcia argues that the prosecutor's closing statements impermissibly bolstered the credibility of its declarants. Garcia objects to four comments:

1. [T]here's no suggestion that any of the hundreds of thousands of people that work for the Department of Homeland Security and ICE would want to make something up about this one defendant. What motivation do they have? These are hardworking people—

2. These are hardworking people who go in to work every day and who do their job . . . everybody in this case has done their job.

3. And it's no different, as we talked about in testimony, when after September 11th, this department was created. . . . We don't require that the pilot then come through the plane, or the flight attendant, and recheck the boarding pass again, rescan everybody for any weapons, because we rely on the system in our country that people do their job because they care and that's what they do.

4. So now we'd ask, Ladies and Gentlemen, that you do the final part of your job, which is to go back and deliberate, and we ask that you find him guilty as the evidence shows he is.

## No. 17-10862

Even if we find these statements to be improper, that does not conclude the inquiry: "Overturning a jury verdict for prosecutorial misconduct is appropriate only when, 'taken as a whole in the context of the entire case,' the prosecutor's comments 'prejudicially affect[ed the] substantial rights of the defendant.'" *United States v. Delgado*, 672 F.3d 320, 337 (5th Cir. 2012) (en banc) (quoting *United States v. Risi*, 603 F.2d 1193, 1196 (5th Cir. 1979)). This court determines whether substantial rights were affected by assessing three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* (quoting *United States v. Wyly*, 193 F.3d 289, 299 (5th Cir.1999)). Garcia has failed to show reversible error under this standard.[1]

Determining the propriety of the prosecutor's statements requires examining the context in which they were made. *See United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007). In this case, the prosecutor began her initial closing arguments by telling the jury that their "job is not yet finished," and stressing the importance of their duty "to render a decision based on the law and the evidence." The prosecutor then reviewed the evidence substantiating each element of an illegal reentry, concluding that the only disputed issue was whether Garcia actually "crossed that bridge" and left the United States in 2015 as the warrant of removal attests. In context, then, the challenged remarks principally involve the prosecutor's defense of the warrant of removal's credibility.

---

[1] The government claims that Garcia's objection during trial did not preserve his challenges to Statements Three and Four, thus requiring us to apply plain error review. Because Garcia's arguments fail under the less rigorous standard, we need not resolve this question.

No. 17-10862

Garcia argues that Statement One improperly suggests that acquittal would require belief in a vast government conspiracy. This court has deemed such statements improper. *United States v. Gracia*, 522 F.3d 597, 601-02 (5th Cir. 2008); *United States v. Goff*, 847 F.2d 149, 164 (5th Cir. 1988). But here, the prosecutor's statement that there is no evidence of a motive for ICE employees "to make something up about" Garcia does not suggest that acquittal would require a government conspiracy. *Compare Goff*, 847 F.2d at 163 (error where prosecutor stated that acquittal required the jury "to believe that there is a conspiracy but the conspiracy started apparently in Las Vegas and involves the Internal Revenue Service, the Drug Enforcement Administration, the F.B.I., the Texas Department of Public Safety, the United States Attorneys Office, . . and maybe even a judge or two"); *Gracia*, 522 F.3d at 600 (error for prosecutor to state that acquittal required believing that police "got out of bed . . .[and decided] that [they] were going to start [a] conspiracy to wrongfully convict" the defendant).

Statement One above is not evoking a vast government conspiracy but is instead rebutting the defense's implication that whoever signed the warrant of removal may have falsified the record. Indeed, we have held that, although a prosecutor "cannot express a personal opinion on the credibility of witnesses" it is permissible to "argue fair inferences from the evidence that a witness has no motive to lie." *Gracia*, 522 F.3d at 601. Here, the prosecutor did not voice her personal opinion. *See United States v. Smith*, 814 F.3d 268, 274 (5th Cir. 2016). Instead, she "argue[d] fair inferences from the evidence" when she stated that there was "no suggestion" of a motive to fabricate.

During trial, moreover, Garcia had stressed that the "ethics of the individual who prepared" the warrant of removal were unknown. Garcia's closing statements returned to this issue: "How can we verify or know if the person who supposedly witnessed the departure . . . wasn't fired a month later

6

for falsifying documents?"  Given Garcia's emphasis on this point throughout trial, the prosecutor's rhetorical question in Statement One was a permissible response.

The prosecutor also did not act improperly by referring to DHS employees as "hardworking" in Statements One and Two.  This description was a reasonable inference from testimony by Officers Sims and Lee, much of which detailed the extensive processes and quality controls involved in alien removal. To the extent references to government employees as "hardworking" is rhetorical, this court has acknowledged that a prosecutor's "closing argument is just that—argument—we allow prosecutors to use expressive language and 'a bit of oratory and hyperbole.'"  *United States v. Boyd*, 773 F.3d 637, 645 (5th Cir. 2014) (quoting *United States v. Thompson*, 482 F.3d 781, 786 (5th Cir. 2007).

Turning to Statements Two and Three, Garcia argues that the prosecutor improperly bolstered the credibility of the ICE documents by emphasizing that ICE officials had "done their job."  We have held that it is improper for a prosecutor "to tell the jury that law enforcement witnesses should be believed simply because they were doing their job."  *United States v. Gracia*, 522 F.3d at 601.  In other words, a prosecutor should not tell a jury to credit witnesses simply because they are *government* agents.  In *Gracia*, the prosecutor violated this rule by saying, "I'm going to ask you to respect their efforts as law enforcement officials and to believe the testimony that they offered."  *Id.* at 600.

But here the prosecutor's statements are not an appeal to faith in government generally or law enforcement in particular.  The crux of the prosecutor's remarks is that ICE records are the product of employees' routine record-making.  Just after Statement Two, the prosecutor emphasized that "as a result of doing their job and to document what they've done, [the employees]

keep records." Again, the point is not that the jurors should trust the government but that it is reasonable to "rely on the system in our country that people do their job because they care."

Garcia also challenges Statement Three on the grounds that the reference to September 11th constitutes an emotional appeal and that the TSA analogy improperly invokes the aegis of the government. In context, the prosecutor's mention of September 11th is reasonable given her analogy to TSA security. The TSA analogy, for its part, details why a warrant of removal could be considered trustworthy without the testimony of the witness to the removal. When getting on a plane, the prosecutor explained, individuals do not need to show their proof of identification "because on that boarding pass is some type of notification or initial or circle [made by a TSA agent] to show that they have verified that you are one and the same person listed on that boarding pass." The signature on the warrant of removal, the prosecutor implied, is similarly significant because it indicates that a quality-control measure has been completed. This is not an improper comparison.

Garcia's challenge to Statement Four mischaracterizes it, and incorrectly suggests that the prosecutor told the jury they had a civic duty to convict. To the contrary, the challenged statement itself properly defines the jury's job, "which is to go back and deliberate." This statement refers back to the prosecutor's opening remarks in which she enjoined the jurors to "render a decision based on the law and the evidence."

In sum, the challenged statements were not improper. Moreover, they certainly did not affect Garcia's substantial rights. That any prejudice from the statements was minimal is corroborated by the district court's decision to overrule Garcia's objection. *See United States v. Bennett*, 874 F.3d 236, 246 (5th Cir. 2017) ("We give great weight to the trial court's assessment of the prejudicial effect of the evidence.") (citations omitted). Critically, the

government's case against Garcia was strong, with no countervailing evidence. Garcia's only defense was that it was inadequate for the government to rely on ICE records to prove certain elements of the illegal reentry. This court has held that the government "must be permitted to rely on such records." *United States v. Quezada*, 754 F.2d 1190, 1195 (5th Cir. 1985).

Garcia points out that the jury, during deliberations, returned a question about why one of the signatures on Garcia's warrant of removal had a line through it. According to Garcia, this demonstrates that the jury was suspicious of the warrant's validity and the prosecutor's statements may have tipped the scales in favor of conviction. But even absent the warrant of removal itself, the other ICE records—e.g. the Notice of Intent to Issue a Final Administrative Removal Order and the Final Administrative Removal Order—provide ample evidence that Garcia was removed in 2015, as does Garcia's admission that he entered the country illegally in May 2016. Any prejudice did not affect Garcia's substantial rights.

## II.    Hearsay and Confrontation Clause Claims

At trial, Garcia objected to the admission of his ICE records on hearsay and Confrontation Clause grounds. The district court overruled these objections. On appeal, Garcia challenges only the admission of the warrant of removal. Under consistent circuit precedent, the warrant of removal was properly admitted under Federal Rule of Evidence 803(8)—the public records exception. Likewise, contrary to Garcia's contention, recent Supreme Court decisions on the scope of the Confrontation Clause have not abrogated this court's holding that warrants of removal are nontestimonial.

In *United States v. Quezada*, this court held that a warrant of deportation was properly admitted under the public records exception to the hearsay doctrine. 754 F.2d 1190, 1194 (5th Cir. 1985); Fed. R. Evid. 803(8). Garcia argues that his warrant of removal should not fall under this exception

No. 17-10862

because "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. (803)(8)(B).  To prove the document's "lack of trustworthiness," Garcia points to the line drawn through the name of the individual who verified the departure.

Garcia's untrustworthiness argument relies on *United States v. Arledge*, 553 F.3d 881 (5th Cir. 2008).  In *Arledge*, the court held that a district court *did not* abuse its discretion by *excluding* an alleged business record where the document's proponent could not provide a witness to testify to the document's purpose, the document contained handwritten notes from multiple individuals, and some information had been scratched out.  *See Arledge*, 553 F.3d at 892-93.  In this case, Officer Sims testified to the warrant of removal's purpose and the procedures used to create it.  Likewise, the presence of Garcia's photograph and fingerprints on the document serve as further assurance of its trustworthiness.  The district court properly admitted the record.

Garcia also argues that the admission of his warrant of removal violated the Confrontation Clause of the Sixth Amendment, which guarantees a criminal defendant the right "to be confronted with witnesses against him." U.S. Const. amend. VI.  In *Crawford v. Washington*, the Supreme Court held that the prosecution violates this clause when it introduces "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004).  The Court also held that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." *Id.* at 55, 124 S. Ct. at 1367.

Applying *Crawford*, this court held in *United States v. Valdez-Maltos* that warrants of removal are nontestimonial and thus not subject to

10

confrontation.  443 F.3d 910, 911 (5th Cir. 2006).  Subsequently, in 2009, the Supreme Court decided *Melendez-Diaz v. Massachusetts*, which held that "certificates of analysis" prepared by a laboratory technician to determine whether a substance possessed by a defendant is illegal are testimonial. 557 U.S. 305, 329, 129 S. Ct. 2527, 2542 (2009).  Garcia argues that *Melendez-Diaz* abrogated this court's decision in *Valdez-Maltos*.  We disagree and affirm that warrants of removal remain nontestimonial after *Melendez-Diaz*.[2]

In *Valdez-Maltos*, the court relied on two prior decisions:  *United States v. Quezada* and *United States v. Rueda-Rivera*, 396 F.3d 678 (5th Cir. 2005). As explained above, *Quezada* held that a warrant of removal was properly admitted under the public records exception.  In *Rueda-Rivera*, the court held that certificates of non-existence of record ("CNRs")—documents that certify an alien has not applied for entry into the United States—do not violate the Confrontation Clause when they are admitted without the testimony of the analyst who prepared them.  396 F.3d at 680.

A subsequent panel, however, held that *Rueda-Rivera* was abrogated by *Melendez-Diaz*.  *See United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010) ("Because our holding in *Rueda-Rivera* that CNR[ ]s are not testimonial statements cannot survive *Melendez-Diaz*, *Rueda-Rivera* is overruled."). Indeed, language in *Melendez-Diaz* directly implicated the use of CNRs by stating that "a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it" was "[l]ike the testimony of the analysts in this case" and must be "subject to confrontation." 557 U.S. at 323, 129 S. Ct. at 2539.

---

[2] This court has already affirmed that *Valdez-Maltos* remains good law after *Melendez-Diaz*, but it did so in an unpublished opinion.  *See United States v. Becerra-Valadez*, 448 Fed. Appx. 457, 463 (2011).

By comparison, *Melendez-Diaz* does not directly implicate this court's post-*Crawford* determination that warrants of removal are nontestimonial. Garcia argues that, after *Melendez-Diaz*, warrants of removal are not insulated from a confrontation challenge merely because they involve official and routine procedures. This much is true. The certificates of analysis in *Melendez-Diaz* were completed as a routine part of the analysts' official duties. But *Melendez-Diaz* emphasized the distinction between official records that are kept in the ordinary course of an entity's business and those that are produced specifically "for the purpose of establishing or proving some fact at trial." *Melendez-Diaz*, 557 U.S. at 324, 129 S. Ct. at 2539-40. As the Court explained, the certificates of analysis were subject to confrontation because they were "prepared specifically for use at petitioner's trial." *Id.* at 324, 129 S. Ct. at 2540.

By contrast, warrants of removal are nontestimonial because they are not "prepared specifically for use at . . . trial." They must be issued for cases resulting in a final order of removal, *see* 8 C.F.R. § 241.2, to memorialize an alien's departure—not specifically or primarily to prove facts in a hypothetical future criminal prosecution. Accordingly, *Melendez-Diaz* does not require that warrants of removal be subject to confrontation.

Every circuit to address this issue post-*Melendez-Diaz* has reached the same conclusion and found warrants of removal to be nontestimonial. *See United States v. Lorenzo-Lucas*, 775 F.3d 1008, 1010 (8th Cir. 2014) ("Indeed, nothing in *Melendez–Diaz* is clearly irreconcilable with [the] holding that a warrant of removal is nontestimonial because it was not made in anticipation of litigation.") (citations omitted); *United States v. Orozco-Acosta*, 607 F.3d 1156, 1163 (9th Cir. 2010) ("Unlike the certificates of analysis in *Melendez–Diaz,* neither a warrant of removal's sole purpose nor even its primary purpose is use at trial."); *United States v. Arias-Rodriguez*, 636 F. App'x 930, 933 (7th Cir. 2016) ("Unlike the report in *Melendez-Diaz*, the

warrants of removal at issue here were created for the internal use of agencies tasked with enforcing immigration laws, and only a small percentage ever are used in criminal prosecutions."). In sum, we hold that *Melendez-Diaz* has not overruled *Rueda-Rivera*'s sound conclusion that warrants of removal are admissible in criminal prosecutions absent confrontation.

## III.  *Brady* **Claim**

Garcia also contends that the district court erred by denying his motion for a new trial because the government violated its *Brady* duty by failing to inform him that his admission occurred before he received *Miranda* warnings. Garcia claims he was misled by the *Miranda* waiver, which indicated that he had signed it on October 11—the date of his admission—whereas testimony at trial revealed that he had likely signed the document on October 17. To establish a *Brady* violation, Garcia must show that (1) the evidence at issue was favorable to him; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material. *United States v. Brown*, 650 F.3d 581, 587-88 (5th Cir. 2011). Garcia's *Brady* claim fails to satisfy the second element:  he has not shown that "evidence was suppressed by the prosecution."

Garcia himself participated in the conversations with Officer Sims, and he signed the *Miranda* waiver. He thus had direct, personal knowledge concerning the dates on which his admission and *Miranda* waiver occurred. This court has repeatedly affirmed that regardless of whether the evidence was material or even exculpatory, "[w]hen information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *Pippin v. Dretke*, 434 F.3d 782, 790 (5th Cir. 2005) (quoting *United States v. Brown*, 628 F.2d 471, 473 (5th Cir.1980). As the government points out, any confusion over the date Garcia signed the *Miranda* waiver was evident on the face of the document: Officer Sims, who

signed the form as a witness to the waiver, wrote October 17 for the date; a second officer witness wrote October 19 on the form. No evidence was suppressed for *Brady* purposes. *See Pippin*, 434 F.3d at 790.

## CONCLUSION

For these reasons, Garcia's conviction is **AFFIRMED.**