# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-51128

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

KIMBERLEY DALE BOYCE,

      Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2019

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:16-CR-161-1

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:*

      Following a jury trial, Defendant-Appellant Kimberley Dale Boyce ("Defendant" or "Boyce") was convicted on three counts each of mail fraud, wire fraud, money laundering, and tax evasion. She was sentenced to twelve concurrent terms of 60 months imprisonment and ordered to pay $2,039,014.53 in restitution to the victim, Gary Rogers ("Rogers"). Boyce now appeals her conviction and sentence. We affirm.

---

    \* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-51128

## I.  FACTS AND PROCEEDINGS

### A.  Background

Boyce and Rogers have known each other since high school. When Rogers's oil field business, Rogers General Construction ("RGC"), began to grow, he approached Boyce for accounting assistance. Although she had a full-time job, she agreed to help Rogers. Over time, their professional relationship expanded to include a romantic one. Boyce and Rogers lived together for substantial periods of time, sent out Christmas cards together, and purchased properties together. Rogers eventually proposed, but the two never married. Boyce continued to file taxes as "head of household."

Throughout the relationship, Boyce was mainly (and at times solely) responsible for managing RGC's accounting books. She was also responsible for RGC's banking, had access to RGC's P.O. Box, and was responsible for picking up checks and depositing them in the company's bank accounts. Rogers executed a power of attorney so that Boyce could more easily complete transactions on behalf of RGC. She was compensated by RGC, and although Boyce claims that she viewed these payments as a kind of allowance for maintaining Rogers's household, he characterized them as a salary for her accounting work. Boyce did not report much of this compensation on her tax returns. At some point during the relationship the couple started to have disagreements, and Boyce stopped working for RGC for a brief period.

In February 2012, Boyce opened the Wells Fargo bank accounts at issue here. Using her power of attorney and an "Assumed Name Records Certificate of Ownership" for RGC, she opened business savings and checking accounts. The mailing information for the accounts listed Boyce's personal P.O. Box rather than RGC's and Boyce was the sole authorized signer on the accounts. To open the accounts, she gave Wells Fargo two checks totaling just over

$184,000 made out to RGC. She had retrieved both checks from RGC's P.O. Box. Boyce claimed that she opened the Wells Fargo accounts so that RGC could get financing for some vehicle purchases, but no evidence of that financing was produced at trial.

Over time, Boyce deposited checks made out to RGC worth $2.7 million into the Wells Fargo accounts. Those funds were not used for RGC; rather, they were either transferred into other accounts over which Boyce had exclusive control or used to purchase property for Boyce. She did not report any of those funds on her tax returns.

Boyce eventually resumed working for RGC, but her personal relationship with Rogers ended when they separated early in 2014. As the relationship broke down, Rogers requested that the two disentangle their finances. In January and February of 2014, Boyce transferred funds from the couple's joint bank accounts to Rogers's separate accounts. In April 2014, Boyce signed over her interest in many of the properties that had been jointly purchased. She also returned a diamond engagement ring. Evidence produced at sentencing suggests that she also relinquished her interest in a boat, stock in a water disposal company, and a Dodge pickup truck.

That breakup was not amicable. Transcripts of voicemails and text messages between the couple reveal that by early 2014 Rogers had come to dislike Boyce intensely. He became suspicious when he discovered that large sums of money were missing. During an audit by one of RGC's clients, the auditor found the two Wells Fargo accounts in RGC's accounting records that had been labeled "inactive." Rogers indicated that he was shocked and upset about the existence of these accounts.

Boyce was indicted on twelve counts arising from the alleged scheme to defraud RGC, including (1) three counts of mail fraud in violation of 18 U.S.C. § 1341, (2) three counts of wire fraud in violation of 18 U.S.C. § 1343, (3) three

No. 17-51128

counts of money laundering in violation of 18 U.S.C. § 1957, and (4) three counts of tax evasion in violation of 26 U.S.C. § 7201.

B.     Pretrial Hearing

At a pretrial hearing, the defense explained that its theory of the case was that Rogers was "essentially making up these allegations that he had no idea about" the Wells Fargo accounts. To support that theory, the defense planned to use transcripts of voicemails and text messages that Rogers had sent to Boyce. Counsel for Boyce also wanted to present evidence that Rogers was physically abusive. The defense intended to show that Rogers was "a misogynist and a racist." The district court excluded this evidence, concluding that its probative value was substantially outweighed by its prejudicial effect. The court suggested that Boyce could renew her attempts to use the evidence during trial.

To rebut the government's evidence that Boyce intended to defraud Rogers, defense counsel indicated that part of his strategy would be to show that, even though Boyce and Rogers "were not legally married," they shared everything. The district court barred any suggestion that the two were married. The court did, however, allow Boyce to testify about the serious nature of the relationship.

C.     Trial

Before beginning to cross-examine Rogers, Boyce's trial counsel renewed his objection to the exclusion of the voicemails and text messages. But counsel only sought to admit the exhibits en masse and did not try to identify a handful that were especially probative. The district court overruled the objection. Prior to direct examination of Boyce, her attorney confirmed that he was not permitted to question Boyce about her belief that she was married to Rogers or her allegations of physical and mental abuse. Direct examination, however, elicited that Boyce considered herself engaged to be married to Rogers at the

## No. 17-51128

time and that she referred to Rogers as her husband. She also admitted that Rogers was not informed that she was going to open the Wells Fargo accounts.

The jury returned a guilty verdict on all twelve counts. A presentence investigative report ("PSR") recommended that Boyce's offense level should be increased by sixteen levels pursuant to § 2B1.1(b)(1)(I) because her crimes caused losses exceeding $1.5 million. At the sentencing hearing, Boyce claimed that the loss calculation should be credited for just over $1.3 million worth of property that she said she had returned to Rogers. The court disagreed and accepted the recommendation of the PSR.

The district court sentenced Boyce to five years in prison—below the guidelines recommendation for nine of the twelve counts—followed by three years of supervised release. The court also ordered Boyce to pay $2,039,830 to Rogers in restitution. Boyce now appeals her conviction and sentence.

## II.     LAW AND ANALYSIS

### A.     Evidentiary Rulings

This court reviews alleged violations of a defendant's rights under the Confrontation Clause *de novo*, subject to harmless error analysis.[1] If there is no constitutional error, the allegedly impermissible limitation of cross-examination is reviewed for abuse of discretion.[2] Claims that a defendant was denied the right to present a complete defense are also reviewed *de novo*.[3]

### 1.     *Evidence of Bias*

Boyce claims that the district court's exclusion of evidence of Rogers's alleged emotional and physical abuse violated her rights under the Confrontation Clause. A defendant is guaranteed a meaningful opportunity to

---

[1] *United States v. Garcia*, 887 F.3d 205, 209 (5th Cir. 2018).

[2] *United States v. Templeton*, 624 F.3d 215, 223 (5th Cir. 2010).

[3] *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008).

cross-examine witnesses against her.[4] Moreover, "[t]he partiality of a witness is subject to exploration at trial and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'"[5] The Sixth Amendment requires the opportunity to show some evidence of bias.[6] Although the scope of cross-examination is within the discretion of the trial court, that discretion "comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment."[7]

The district court nevertheless has "wide latitude" to place limits on cross-examination based on, *inter alia*, concerns about harassment and prejudice.[8] Inquiry into whether there has been a constitutional violation in the exclusion of bias evidence typically includes determining whether the evidence was properly excluded under Federal Rule of Evidence 403.[9] That rule allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[10] It was on this basis that the district court excluded evidence of abuse.

The defense intended to show not only Rogers's bias against Boyce, but also to cast him as a "misogynist and a racist." It is well within the discretion of the trial court to exclude evidence "that arouse[s] the jury's hostility or sympathy without regard" to its probative value.[11] The trial judge is tasked with excluding evidence brought forth for the sake of its prejudicial effect.[12]

---

[4] *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974).

[5] *Id.* at 316.

[6] *United States v. Abel*, 469 U.S. 45, 50 (1984).

[7] *Skelton*, 514 F.3d at 438.

[8] *Delaware v. Van Arsdall*, 475 U.S. 673, 639 (1986).

[9] *Skelton*, 514 F.3d at 440.

[10] Fed. R. Evid. 403.

[11] MCCORMICK ON EVIDENCE § 185 (7th ed.); *see also United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) ("One purpose of Rule 403 is to prevent evidence from 'inducing decision on a purely emotional basis.'").

[12] *Fields*, 483 F.3d at 354.

No. 17-51128

Although here the voice and text messages might have some probative value, their greatest stated value to the defense was their propensity to stir the jury's sympathy for Boyce and to arouse its anger toward Rogers. Although reasonable minds could disagree on the Rule 403 balance of this evidence, its exclusion was not outside the wide latitude afforded to the district court to impose reasonable limits on cross-examination.[13] That is especially true because defense counsel never tried to offer a narrower set of the messages that may have minimized the district court's concern about prejudice. Besides, Boyce's cross-examination elicited sufficient information that suggested Rogers's prejudice against her.

### 2.    Evidence of Belief of Marriage

Boyce next argues that she was prevented from presenting a complete defense because the district court precluded her from testifying that she believed she was informally married to Rogers. Such claimed errors are typically reviewed *de novo*,[14] but the government contends that this objection by Boyce was either waived and unreviewable or not properly preserved, and therefore is reviewable only for plain error.

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'"[15] Waived arguments are "entirely unreviewable."[16] At the pretrial hearing, Boyce's trial counsel made clear that the two "were not legally married," and when asked by the court whether he was planning to claim that they were common-law married, he responded, "No, I'm not." Boyce thereby waived the argument that she and Rogers were in fact in an informal marriage.

---

[13] *Van Arsdall*, 475 U.S. at 679.

[14] *Skelton*, 514 F.3d at 438.

[15] *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

[16] *United States v. Ceballos*, 789 F.3d 607, 613 (5th Cir. 2015).

No. 17-51128

Boyce, however, filed a pretrial memorandum in which she argued that she should be allowed to "articulate why she *believed* she was in an informal marriage" because it would illuminate whether she harbored the intent to defraud Rogers and whether she willfully misstated her income on her tax returns. The district court determined that this theory would not be allowed to come before the jury, but that Boyce would be allowed to testify that the two lived together and managed a household together. This ruling was repeated at trial. Its effect was to preclude testimony from Boyce that she believed they were informally married under Texas law and evidence that might support this belief. This objection was properly preserved.

The Constitution guarantees defendants a meaningful opportunity to present a complete defense.[17] The Federal Rules of Evidence guide the inquiry, and the district court's decisions under those rules are reviewed for abuse of discretion.[18] Analysis of whether a potential error in this context was harmless resembles the previous analysis of alleged Confrontation Clause violations.[19]

The district court excluded this evidence because it believed it was "not a legal theory" or a defense to the crimes for which Boyce was indicted. Federal Rule of Evidence 403 gives trial courts discretion to exclude evidence if the danger that it will confuse the issues or waste time substantially outweighs its probative value.[20] Here, the probative value of this testimony was negated by Boyce's own testimony and other evidence produced at trial. Boyce testified that she was *engaged* to be married to Rogers, and her tax forms show that she filed as "head of household" instead of "married." Her trial counsel also elicited testimony from both parties about the seriousness of their relationship. The

---

[17] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

[18] *Skelton*, 514 F.3d at 438.

[19] *Id.* at 445 n.7.

[20] Fed. R. Evid. 403.

No. 17-51128

district court did not abuse its discretion, and Boyce was able to present a complete defense.

### 3.     *Cumulation*

Boyce also asserts that, even if these evidentiary rulings were not harmful on their own, their cumulative effect justifies reversal. The cumulative error doctrine justifies reversal when errors "so fatally infect the trial that they violated the trial's fundamental fairness."[21] Put another way, cumulative error justifies reversal only when contrary rulings "would have produced a very different trial."[22] This is not the "unusual case" in which repetitive errors combine to violate the defendant's right to a fair trial.[23]

We perceive no error in the district court's handling of the trial, so we affirm Boyce's conviction.

### B.     Sentencing

This court reviews sentences for abuse of discretion but undertakes a *de novo* review of the district court's application of the sentencing guidelines.[24] A district court's calculation of a victim's loss is generally a factual finding reviewed for clear error.[25] But how the sentencing court calculated the loss is an application of the guidelines that is reviewed *de novo.*[26] The imposition of a restitution award is reviewed *de novo*, but the calculation of the amount of restitution is reviewed for abuse of discretion.[27]

---

[21] *Fields*, 483 F.3d at 362.

[22] *United States v. Jimenez-Laines*, 354 F. App'x 889, 896 (5th Cir. 2009) (citing *United States v. Riddle*, 103 F.3d 423, 434 (5th Cir. 1997)).

[23] *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (en banc).

[24] *United States v. Klein*, 543 F.3d 206, 213 (5th Cir. 2008).

[25] *United States v. Mahmood*, 820 F.3d 177, 192 (5th Cir. 2016).

[26] *Klein*, 543 F.3d at 213.

[27] *Mahmood*, 820 F.3d at 196.

### 1.    *Loss Calculation*

United States Sentencing Guidelines § 2B1.1 makes the loss to the victim a specific offense characteristic that, depending on the amount, will increase a defendant's offense level for purposes of sentencing. The loss is calculated by measuring the greater of the victim's actual loss or the loss intended by the defendant.[28] That loss, however, must be reduced by "the money returned, and the fair market value of the property returned and the services rendered, by the defendant . . . to the victim before the offense was detected."[29] The time of detection of an offense is the earlier of the actual discovery or the time the defendant knew or should have known that detection was imminent.[30] The court "need only make a reasonable estimate of the loss."[31]

The PSR, which was adopted by the district court, determined that the loss intended by Boyce was $2,712,049.22, increasing her base offense level by sixteen.[32] The PSR did note, however, that Rogers's actual loss was less. Boyce had returned just over $650,000 of the embezzled funds prior to detection of the crime, making the actual loss $2,039,014.53. Even this amount, however, would be sufficient for a sixteen-level increase.[33]

On appeal, Boyce insists that the district court wrongly denied a reduction in the loss calculation for several properties that were jointly purchased and are now in Rogers's name exclusively. The government counters that many of these properties were either (1) returned after Boyce should have known that discovery of her fraudulent scheme was imminent and therefore

---

[28] U.S.S.G. § 2B1.1 (n.3(A)).

[29] U.S.S.G. § 2B1.1 (n.3(E)(i)).

[30] *Id.*

[31] U.S.S.G. § 2B1.1 (n.3(C)).

[32] *See* U.S.S.G. § 2B1.1(b)(1)(I).

[33] *Id.*

could not be credited against the loss, or (2) unsupported by evidence produced at sentencing. The district court denied any credit.

At a sentencing hearing, the defendant has the burden of showing by a preponderance of the evidence that she is entitled to a reduction in the loss calculation.[34] A credit is warranted for money or property "returned" to the victim before the detection of the crime.[35] Most of the credits requested by Boyce were for properties that, on the relevant documents, were listed in both her and Rogers's names. But there was no evidence that these transfers "returned" anything. The plain meaning of this guideline shows that it contemplates the return of stolen money or property. Although a credit might be warranted even though the defendant did not return the exact property stolen, the property returned must still be traceable to the embezzled funds.[36]

Boyce signed over her interest in jointly owned properties that the evidence suggests were purchased almost entirely with Rogers's money. There is also no evidence that the transfers were made to compensate Rogers for Boyce's crime; rather, the two were ending their relationship and disentangling their finances. Boyce's transfers were not part of the underlying fraudulent scheme, but simply an independent product of her breakup with Rogers. The district court did not err in its guidelines calculation.

Moreover, any error would be harmless. The district court adopted the PSR, which determined that Boyce's offense level was twenty-eight and her criminal history category was I. The guidelines range for sentencing was 78–97 months. A sentence within that range was statutorily permissible for the wire fraud, mail fraud, and money laundering convictions, but both the

---

[34] *Mahmood*, 820 F.3d at 194.

[35] U.S.S.G. § 2B1.1 (n.3(E)(i)).

[36] *Accord United States v. Shepard*, 269 F.3d 884, 887–88 (7th Cir. 2001) (applying a similar principle in the restitution context).

statutory maximum and guidelines sentence for her tax fraud convictions were 60 months.[37] The district court noted, after considering the 18 U.S.C. § 3553(a) factors, that a downward variance to 60 months was fair and reasonable. Even if the court had awarded Boyce every credit she requested, her offense level would have been twenty-six and her guidelines range would have been 63–78 months–entirely above her ultimate sentence of 60 months.

A district court's miscalculation of the guidelines range for a sentence is harmless if the government shows "both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."[38] Although this has been called a heavy burden,[39] the government has met it in this case. In *United States v. Ramos*, this court found a sentencing error harmless when the district court's sentence was below guidelines, based on the § 3553(a) factors and the lesser statutory maximum of several counts.[40] Similarly here, even the alternate calculation would have resulted in a guidelines range above the defendant's ultimate sentence, and it is reasonable to infer that her sentence was the least of the possible statutory maximum sentences.

### 2.    *Restitution*

Boyce was ordered to pay restitution under 18 U.S.C. § 3663A in the amount of $2,039,014.53. A district court may order the defendant to pay restitution to the victim by returning the property stolen or, if that is not feasible, by paying an amount equal to the value of the property as of the date of sentencing or when it was stolen, whichever is greater.[41] As in the sentencing context, the restitution amount must be reduced by "the value . . .

---

[37] U.S.S.G. § 5G1.1(a).

[38] *United States v. Morrison*, 713 F.3d 271, 282 (5th Cir. 2013).

[39] *United States v. Ibarra-Luna*, 628 F.3d 712, 717 (5th Cir. 2010).

[40] 739 F.3d 250, 253 (5th Cir. 2014).

[41] 18 U.S.C. § 3663A(b).

of any part of the property that is returned" to the victim.[42] The defendant has the burden of showing an entitlement to a reduction in restitution owed.[43]

Boyce insists that the district court erred when it failed to account for the properties she signed over to Rogers. The government responds that Boyce did not properly preserve her objection to the restitution calculation so that this panel should review for plain error.

Boyce objected to the district court's refusal to credit the loss calculation for sentencing purposes. She made a general objection to the order of restitution. It is an open question in this circuit whether an objection to a sentencing court's *loss* calculation is sufficient to preserve an objection to that court's *restitution* calculation.[44] Fifth Circuit precedent, however, "could be read to hold that an objection to the Guidelines loss calculation preserves a restitution argument."[45] The arguments here for a credit under U.S.S.G. § 2B1.1 are essentially the same as those made by Boyce for a reduction in the amount of restitution that she owed.

The district court adopted the PSR, which found that, of the $2,712,049.22 that Boyce embezzled, she returned $650,170. As in the sentencing context, the restitution statute's insistence on a reduction for "any part of the property that is returned" contemplates a return of stolen funds, not any property the defendant gives the victim.[46] Of course, "a victim cannot receive a windfall from restitution," but there has been no showing that the credits Boyce seeks are for property that is in any way traceable to the funds

---

[42] 18 U.S.C. § 3663A(b)(1)(B)(ii).
[43] *United States v. De Leon*, 728 F.3d 500, 506–07 (5th Cir. 2013).
[44] *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007).
[45] *Id.* (citing *United States v. Cockerham*, 919 F.2d 286, 288 (5th Cir. 1990)).
[46] 18 U.S.C. § 3663A(b)(1)(B)(ii) (emphasis added).

No. 17-51128

she embezzled.[47] The government has produced evidence of hundreds of checks deposited in the fraudulent Wells Fargo account. Even though the credit of $650,170 was proper, Boyce "offered little to no concrete evidence" to show that her transfers returned any of the stolen property.[48] Neither was there anything that showed Boyce returned these properties to Rogers in restitution for her crime. She was simply disentangling herself at Rogers insistence from his finances as the two ended their relationship. The district court did not err in its restitution order.

### III.    CONCLUSION

The Defendant's convictions and sentence are AFFIRMED.

---

[47] FED. CRIM. RESTITUTION § 7:16; *see also Shepard*, 269 F.3d at 887–88 (describing how property provided to the victim that is traceable to the funds stolen in the underlying fraud can require a restitution credit).

[48] *United States v. Sanjar*, 876 F.3d 725, 748 (5th Cir. 2017).