# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 15, 2011

Lyle W. Cayce
Clerk

No. 10-50385

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIO CESAR MONTALVO-RANGEL, also known as Julio Cesar Montalvo,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. 5:10-CR-64

Before SMITH and STEWART, Circuit Judges.[*]

JERRY E. SMITH, Circuit Judge:[**]

---

[*] Judge Garwood was a member of this panel but died, after oral argument, on July 14, 2011. This matter is decided by a quorum. *See* 28 U.S.C. § 46(d).

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50385

Julio Montalvo-Rangel appeals his conviction of illegal reentry. Finding no error, we affirm.

I.

Montalvo-Rangel was arrested in January 2010 on an outstanding warrant, taken to a county jail, and questioned by Immigration and Customs Enforcement ("ICE") agents. They obtained "biological" information from him, including an admission that he was a Mexican citizen who was in the country illegally, and recorded that information on a document called Form I-213, Record of Deportable/Inadmissible Alien. They also asked Montalvo-Rangel to make a sworn statement for inclusion on a Form I-215B, Record of Sworn Statement in Affidavit Form. They informed him of his *Miranda* rights, as required by the form, and he chose to remain silent.

Montalvo-Rangel was charged with illegal reentry in violation of 8 U.S.C. § 1326(a). He sought to suppress the statements taken from him by the ICE agents and recorded on the Forms I-213 and I-215B. At the hearing on the motion, an ICE agent testified that it was customary practice to obtain information from an arrestee to fill out Form I-213 before providing the *Miranda* warning required by Form I-215B. The government, without explanation, withdrew any reliance on the statements contained in either form. The district court granted the motion to suppress, stating that it found it "troubling" that there "appears to be a standard practice by ICE agents to interrogate individuals first and provide *Miranda* warnings afterward."

The case proceeded to bench trial, where the government sought to admit a Form I-215B from 2008, when Montalvo-Rangel was first deported, which also contained a statement from him declaring that he was a citizen of Mexico. Montalvo-Rangel argued that the 2008 form should be suppressed because (1) admission in evidence would violate his rights under the Confrontation Clause of the

2

No. 10-50385

Sixth Amendment, and (2) the government had failed to prove that the statements contained in the form were knowing and voluntary. During the hearing on the motion to suppress, the government called no witnesses who had been present at the time the form was created or when the statements recorded in the form were made, nor did the government show that the witnesses were unavailable or had previously been subject to cross-examination regarding the form. The district court overruled Montalvo-Rangel's objections, admitted the form in evidence, and found Montalvo-Rangel guilty of illegal reentry.

## II.

Montalvo-Rangel argues that because the agent who filled out the 2008 Form I-215B did not testify, Montalvo-Rangel was denied his constitutional right to "confront" a witness. The "form" in question, however, is actually an affidavit executed by Montalvo-Rangel. Although it was typed by an immigration officer, it was signed and attested to by Montalvo-Rangel. In that respect, it is no different from a person's dictating an affidavit to an assistant before signing it—the "witness" in such a situation is the individual dictating and signing the affidavit, not the one who transcribed it. The language of the document confirms this:

> I, Julio Montalvo-Rangel acknowledge that the above-named officer has identified himself to me as an officer of the United States Department of Homeland Security, authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality laws of the United States. He has informed me that he desires to take my sworn statement regarding: my illegal entry into the United States.
>
> . . .
>
> [Record of questioning, including a question regarding Montalvo-Rangel's citizenship]
>
> . . .

3

No. 10-50385

> I have read (or have had read to me) the foregoing statement con-
> sisting of ___ pages. I affirm that the answers attributed to me
> herein are true and correct to the best of my knowledge and belief
> and that this statement is a full, true, and correct record of my ques-
> tioning by the above-named officer of the Immigration and Natural-
> ization Service. I have initialized each page of this statement. . . .[1]

The form is nothing more than a statement by Montalvo-Rangel; accordingly, the only witness he has the right to confront is himself.

The recent decision in *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), does not alter our analysis. There, a forensic analyst was assigned to test the blood alcohol content of the defendant. The analyst conducted the test and pre-pared a report that, among other things, affirmed that the analyst had received the blood sample with its seal intact and had followed all appropriate procedures in conducting the test. At trial, though the report was admitted into evidence, a different analyst was called to testify. The Court held that, because the report included testimonial statements made to prove a fact at a criminal trial, the defendant's Confrontation Clause rights were violated because the declarant—the analyst who made the testimonial statements—was not made available for cross-examination at trial. Montalvo-Rangel—not the agent who transcribed the affidavit—was the declarant of the testimonial affidavit, and *Bullcoming* gives Montalvo-Rangel only the right to confront himself.[2]

---

[1] On the form, a Spanish translation appears alongside the English text.

[2] Montalvo-Rangel also complains that, by not being able to cross-examine the agent who transcribed the statements, he was unable to develop information concerning the circum-stances under which the form was created and signed. That may be the case, but it is irrele-vant to the Confrontation Clause issue of whom Montalvo-Rangel was entitled to confront once the form was admitted into evidence. The circumstances surrounding Montalvo-Rangel's sig-nature on the form speak to the voluntariness of the affidavit, as well as its admissibility gen-erally under the rules of evidence, and not to the identity of the declarant. Montalvo-Rangel is not entitled, under the Confrontation Clause, to cross-examine witnesses to his own affidavit (he does not contest that it is his signature, which is one item the immigration officer attested

(continued...)

4

No. 10-50385

## III.

"A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998) (citation omitted). Where a defendant challenges the voluntariness of the confession, the burden is on the government to prove, by a preponderance of the evidence, that the statement made was voluntarily. *Id.* In considering a ruling on a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo.* *See United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002).

The 2008 form included a statement, in English and Spanish, that the declarant had received a *Miranda* warning and chose to waive those rights. On the form, Montalvo-Rangel affixed his initials next to the Spanish waiver of his *Miranda* rights and, at the end of the form, affirmed the entirety of the document—including his understanding of his *Miranda* rights and his decision to waive them. Absent any credible contrary evidence, Montalvo-Rangel's attestation in the document itself is sufficient, under a preponderance-of-evidence standard, to show that the confession was given freely and voluntarily.

Montavlo-Rangel, however, argues that the admission was not voluntary because it was the result of a deliberate two-step interrogation strategy,[3] which, generally speaking, is a strategy by which officials interrogate an individual without administering a *Miranda* warning, obtain an admission, administer a

---

[2] (...continued)
that he witnessed).

[3] *See Missouri v. Seibert*, 542 U.S. 600, 611 (2004) (plurality). "*Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken." *United States v. Courtney*, 463 F.3d 333 (5th Cir. 2006) (citing *Seibert*, 542 U.S. at 622). *See also United States v. Nunez-Sanchez*, 478 F.3d 663 (5th Cir. 2007) (holding that a confession was voluntary even though federal agents had initially questioned Nunez without administering a *Miranda* warning, because there was no evidence of a deliberate two-step interrogation strategy).

No. 10-50385

*Miranda* warning, and then obtain the same admission again.

The only evidence Montalvo-Rangel offers for this argument, however, is the circumstances surrounding the statements on the 2010 form, which was excluded at trial on the ground that it was the product of a two-step interrogation. Because Montalvo-Rangel offers no evidence indicating that the 2008 form was also the product of a two-step interrogation strategy, his argument fails.[4]

In light of the *Miranda* warning on the form and the absence of specific evidence of the use of a two-step interrogation strategy when the statement was transcribed, the government has satisfied its burden of showing that the confession was given freely and voluntarily.

AFFIRMED.

---

[4] Montalvo-Rangel does point to testimony from an ICE agent made during the hearing on admitting the 2010 form into evidence: The agent testified that the process used to fill out the 2010 form was "proper practice." That singular statement, however, is insufficient to cast doubt on the propriety of the 2008 form. There is nothing more in the record to indicate what the agent meant by "proper practice," let alone any evidence indicating that the two-step interrogation approach was the "proper practice" of the agents, and office, that had recorded Montalvo-Rangel's statements in 2008.

6