# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 19-20286

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

FERNANDO RAMIREZ NORIA,

> Defendant - Appellant

———————

Appeal from the United States District Court
for the Southern District of Texas

———————

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

A jury convicted Appellant Fernando Ramirez Noria of illegally reentering the United States following removal. Noria challenges the district court's admission of five partial Form I-213s that documented immigration agents' prior encounters with him. He argues that the admission of the forms violated his Sixth Amendment right to confront the witnesses against him. He also contends the forms were inadmissible hearsay. We conclude that the admitted portions of Noria's Form I-213s do not offend the Confrontation Clause and that they are admissible under Federal Rule of Evidence 803(8)'s hearsay exception for public records. Noria's conviction and sentence are affirmed.

No. 19-20286

## I.

In October 2018, a federal grand jury indicted Noria on one count of unlawfully reentering the United States following removal.[1] Noria pleaded not guilty and proceeded to trial. Among other exhibits, the Government sought to introduce five Form I-213s through the testimony of United States Citizenship and Immigration Service ("USCIS") section chief Christine Pool.

An "I–213 is an official record routinely prepared by an [immigration] agent as a summary of information obtained at the time of the initial processing of an individual suspected of being an alien unlawfully present in the United States."[2] Put more simply, it "is a record of an immigration inspector's conversation with an alien who will probably be subject to removal."[3] Typically, an I-213 "includes, *inter alia*, the individual's name, address, immigration status, the circumstances of the individual's apprehension, and any substantive comments the individual may have made."[4] Each of Noria's five I-213s documented a different encounter with immigration authorities between 2014 and 2018. Four of the forms corresponded to four of the five times Noria had previously been removed from the United States, while the most recent I-213 documented the 2018 immigration encounter that led to Noria's illegal-reentry prosecution.

Noria moved to exclude the I-213s "unless the agent who questioned [him] is available to testify at trial and the document is redacted to exclude any prior criminal history information." He argued "[i]t would be unreliable hearsay" and a violation of the Confrontation Clause to permit anyone other

---

[1] *See* 8 U.S.C. § 1326(a).

[2] *Bauge v. I.N.S.*, 7 F.3d 1540, 1543 n.2 (10th Cir. 1993).

[3] 3A C.J.S. *Aliens* § 1355, Westlaw (database updated Dec. 2019); *see also Zuniga-Perez v. Sessions*, 897 F.3d 114, 119 n.1 (5th Cir. 2018) ("A Form I-213 is an 'official record' prepared by immigration officials when initially processing a person suspected of being in the United States without lawful permission.").

[4] *Gonzalez-Reyes v. Holder*, 313 F. App'x 690, 692 (5th Cir. 2009) (unpublished) (citing *Bauge*, 7 F.3d at 1543 n.2).

than the agent who created the document to testify to its contents. Both the court and the Government appeared to agree with defense counsel that because the I-213s contained narrative information about agents' interviews with Noria, they could not be admitted in full unless each of the interviewing officers testified. So, the Government offered only the first page of each I-213, which showed Noria's "routine biographical information," including his name and birthplace. Christine Pool, the USCIS witness, would then be able to testify that each of the I-213s belonged to the same person with the same alien number.

Conceding that the information was hearsay, the prosecutor argued that it was admissible under Federal Rule of Evidence 803(8)'s exception for public records. The court agreed and permitted the Government to introduce the redacted first page of each of the five I-213s. Pool testified that each form was created by an immigration agent shortly "after an encounter with Mr. Noria" and "kept in the regular course of . . . business of the activities of the Department of Homeland Security and USCIS." Each contained, among other information, Noria's name, basic biometric data, aliases, country of citizenship (Mexico), birthdate, birthplace (Tamaulipas, Mexico), and A-file number.[5] All but the most recent also contained Noria's photograph and fingerprints. Pool testified that taken together, the biographical information in the I-213s "show[ed] Noria as being a . . . citizen of Mexico," not of the United States. Pool also certified that Noria had not applied for permission to reenter the United

---

[5] The Government creates an A-file, short for Alien File, "for every non-citizen who comes into contact with a U.S. immigration agency. A-files contain documents relating to any and all interactions which the non-citizen has had with" immigration agencies. IMMIGRATION PLEADING & PRACTICE MANUAL § 2:12, Westlaw (database updated Jan. 2019). Those documents include "all the individual's official record material such as naturalization certificates; various forms (and attachments, e.g., photographs), applications and petitions for benefits under the immigration and nationality laws, reports of investigations; statements; reports; correspondence; and memoranda." *Id.* (quoting *Dent v. Holder*, 627 F.3d 365, 372 (9th Cir. 2010)).

States. On cross examination, Pool testified that she had not personally prepared any of Noria's I-213s or spoken to the agents who prepared them, but that she had experience creating I-213s in the past.

The jury also heard the testimony of George Cortes, a supervisory deportation officer for the Department of Homeland Security ("DHS"), who explained how Noria had been located and selected for prosecution. Cortes had met with Noria in person approximately six months before trial, and he was able to identify Noria in the courtroom. Finally, DHS fingerprint examiner Raymond Miller testified that the fingerprints on Noria's prior warrants of removal and the fingerprints on the I-213s were made by the same person. In addition to witness testimony, a Certificate of Nonexistence of Record, two immigration detainers, and the IJ's initial removal order all identified Noria as a citizen of Mexico. The jury found Noria guilty, and the district court imposed the statutory maximum sentence of 24 months.[6] This appeal followed.

## II.

## A.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[7] In *Crawford v. Washington*, the Supreme Court held that a defendant's confrontation right is violated when the prosecution introduces "testimonial statements of a witness who did not appear at trial," unless that witness "was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[8] Importantly, only *testimonial* statements "cause the declarant to be a 'witness' within the

---

[6] *See* 8 U.S.C. § 1326(a). The statutory maximum was well below Noria's Guidelines range of 41 to 51 months.

[7] U.S. CONST. amend. VI.

[8] *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

meaning of the Confrontation Clause."[9] Without articulating a comprehensive definition, the *Crawford* Court described "testimony" as "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."[10] This includes, "at a minimum[,] prior testimony at a preliminary hearing, before a grand jury, or at a former trial," as well as "police interrogations."[11]

Following *Crawford*, the Supreme Court has explained that "the basic objective of the Confrontation Clause . . . is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial."[12] Thus, the high Court has adopted the "primary purpose" test for determining whether a statement is testimonial in nature.[13] To qualify as "testimonial" under this standard, "a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution."[14] Thus, business and public records are generally not testimonial because they are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial."[15] However, if a public record is "prepared specifically for use at . . . trial," then it is testimonial and therefore inadmissible absent its creator's testimony.[16]

---

[9] *Davis v. Washington*, 547 U.S. 813, 821 (2006); *see id.* ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

[10] *Crawford*, 541 U.S. at 51 (internal alterations omitted).

[11] *Id.* at 68.

[12] *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

[13] *See Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2016).

[14] *Bullcoming v. New Mexico,* 564 U.S. 647, 659 n.6 (2011) (internal alterations and quotation marks omitted) (quoting *Davis*, 547 U.S. at 822).

[15] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

[16] *Id.*; *see United States v. Duron-Caldera*, 737 F.3d 988, 994 (5th Cir. 2013) ("[D]ocuments prepared by immigration officers on immigration forms can be testimonial if created for use at a later criminal trial.").

## B.

In general, the rule against hearsay bars the admission of any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[17] However, the general rule is littered with exceptions, including one for public records. Federal Rule of Evidence 803(8) provides that public records "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." A "record or statement of a public office" qualifies under this exception if:

> (A) it sets out:
>      (i) the office's activities;
>      (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>      (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

The public-records exception "is designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation."[18] It is based on the assumption that public documents "recording routine, objective observations" are free of "the factors likely to cloud the perception of an official engaged in . . . observation and investigation of crime."[19] Instead, "[d]ue to the lack of any motivation on the part of the

---

[17] *United States v. Webster*, 750 F.2d 307, 330 (5th Cir. 1984) (quoting a version of FED. R. EVID. 801(c) that has since been slightly but not substantively amended); *see* FED R. EVID. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.").

[18] *United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985) (citing *United States v. Stone*, 604 F.2d 922, 925 (5th Cir. 1979)).

[19] *Id.*

recording official to do other than mechanically register an unambiguous factual matter . . . such records are [considered] inherently reliable."[20]

Rule 803(8)(A)(ii)'s prohibition against public records of "matter[s] observed by law-enforcement personnel" in criminal cases does not prevent the admission of *all* reports prepared by law enforcement officers. Instead, the Court distinguishes "between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation."[21] The former are admissible, while the latter are not.[22]

## C.

Noria preserved his confrontation and hearsay claims by objecting to the admission of each I-213 at trial. We "review [an] alleged violation of the Confrontation Clause de novo, subject to a harmless error analysis."[23] We review the district court's hearsay ruling for abuse of discretion, also subject to a harmless error analysis.[24]

## III.

Although "hearsay rules and the Confrontation Clause are generally designed to protect similar values,"[25] they "are not wholly congruent."[26] Even if "evidence [is] sufficiently reliable to qualify for admission under a recognized exception to the hearsay rule," it cannot be admitted if it "offend[s] confrontation values."[27] In other words, if Noria's I-213s are testimonial, they

---

[20] *Id.*

[21] *Id.*

[22] *United States v. Wiley*, 979 F.2d 365, 369 (5th Cir. 1992).

[23] *United States v. Kizzee*, 877 F.3d 650, 656 (5th Cir. 2017) (internal alterations omitted) (quoting *United States v. Polidore*, 690 F.3d 705, 710 (5th Cir. 2012)).

[24] *United States v. Lockhart*, 844 F.3d 501, 512 (5th Cir. 2016).

[25] *California v. Green*, 399 U.S. 149, 155 (1970).

[26] *United States v. Sarmiento-Perez*, 633 F.2d 1092, 1099 (5th Cir. Unit A Jan. 1981); *see United States v. Bernard S.*, 795 F.2d 749, 753 (9th Cir. 1986) (citing *Dutton v. Evans*, 400 U.S. 74, 86 (1970)).

[27] *Sarmiento-Perez*, 633 F.2d at 1099; *see Idaho v. Wright*, 497 U.S. 805, 814 (1990).

are inadmissible regardless of Rule 803(8)'s hearsay exception. We therefore address Noria's confrontation argument before turning to his hearsay challenge.

## A.

Noria contends that the admission of I-213s prepared by non-testifying agents "violated [his] Sixth Amendment right to confrontation." He characterizes the reports as testimonial statements made by immigration agents "in preparation for litigation in immigration or criminal court." The Government counters that the admitted portions of the I-213s are not testimonial because they were prepared primarily for internal administrative purposes, not in anticipation of a criminal prosecution. The Government points out that the forms "contain[] only biographical information" supplied by Noria himself, along with routine "immigration tracking information," including the "date, location, and manner" of the interviews. In the Government's view, these are merely administrative data points, not evidence recorded for any subsequent trial.

## 1.

Although this issue was not raised by the parties in their briefing or at oral argument, we hesitate to proceed to the Sixth Amendment analysis without identifying the declarant of the I-213s. After all, the Confrontation Clause becomes relevant only when a *nonparty's* statements are admitted against a defendant. Here, it is at least arguable that Noria himself was the declarant of the challenged portions of the I-213s.

We can safely assume Noria did not dictate the administrative codes on the forms or the notations indicating the subsequent dispositions of his encounters with immigration authorities. However, those are not the data Noria takes issue with. The thrust of his argument concerns only two lines from each I-213: the ones listing his birthplace and his country of citizenship

as Mexico. As he admits, all biographical information on the forms came from Noria himself, either "from what [he] told the agent" or from "documents he had with him." In fact, because Noria's A-file contained no documents indicating his citizenship or birthplace, Noria concedes that the interviewing agents obtained all information from Noria's own oral responses to their questions. These facts indicate that Noria is the sole declarant of the I-213 data he challenges.

Case law further supports this conclusion. In two cases discussed at greater length below, the Ninth and Eleventh Circuits both assumed that an alien is the declarant of all biographical information recorded on his I-213.[28] In fact, in the Eleventh Circuit case, the immigration agent who prepared the contested I-213s *did* testify, but the defense argued that the agent's testimony was insufficient to satisfy the Confrontation Clause because he was not the declarant, only the transcriber of the information supplied to him by the alien.[29] The Eleventh Circuit rejected this argument by concluding that I-213s are not testimonial, but it did not dispute the defendant's characterization of the aliens as the only relevant declarants.[30]

This Court's own persuasive authority lends further support to the alien-as-declarant theory. In *United States v. Montalvo-Rangel*, an unpublished 2011 decision, we rejected the defendant's Confrontation Clause challenge to the admission of a Form I-215B.[31] An I-215B, formally titled a Record of Sworn Statement in Affidavit Form, is a report memorializing an alien's statements to an immigration agent made under oath and with the benefit of *Miranda*

---

[28] *See United States v. Torralba-Mendia*, 784 F.3d 652, 658 (9th Cir. 2015) (describing I-213s as containing both "the agent's narrative [and] statements made by the detainee"); *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010) (accepting the defendant's premise that "the declarants [were] the eleven aliens" discovered on the defendant's boat).

[29] *See Caraballo*, 595 F.3d at 1226.

[30] *See id.* at 1227–29.

[31] 437 F. App'x 316, 318–19 (5th Cir. 2011) (unpublished).

warnings.[32] The I-215B was signed by Montalvo-Rangel and contained an affirmation that its contents were accurate and honest.[33] The Court explained:

> Montalvo-Rangel argues that because the agent who filled out the 2008 Form I-215B did not testify, Montalvo-Rangel was denied his constitutional right to "confront" a witness. The "form" in question, however, is actually an affidavit executed by Montalvo-Rangel. Although it was typed by an immigration officer, it was signed and attested to by Montalvo-Rangel. In that respect, it is no different from a person's dictating an affidavit to an assistant before signing it—the "witness" in such a situation is the individual dictating and signing the affidavit, not the one who transcribed it. . . . The form is nothing more than a statement by Montalvo-Rangel; accordingly, the only witness he has the right to confront is himself.[34]

Noria's I-213s are distinguishable from Montalvo-Rangel's I-215Bs in several respects: Noria was not Mirandized,[35] he did not sign the I-213s, and they contain processing codes and disposition information that must have been supplied by the interviewing officer, not Noria. However, the key information Noria contests—his country of citizenship—*was* supplied by Noria. At least as to that data, the logic of *Montalvo-Rangel* would situate Noria as the "witness" and the interviewing officer as a mere transcriber.

Given these precedents, it is quite possible the Confrontation Clause is not implicated in this case. However, because the issue was not briefed or argued, we will proceed to the merits of the Confrontation Clause issue by assuming, without deciding, that the immigration agents who prepared Noria's I-213s were the declarants of the statements contained therein.

---

[32] *See Rodriguez-Casillas v. Lynch*, 618 F. App'x 448, 456–57 (10th Cir. 2015) (unpublished).

[33] *Montalvo-Rangel*, 437 F. App'x at 317–18.

[34] *Id.* at 318.

[35] The I-213s admitted in this case reflect that Noria was "advised of [his] communication privileges," but that advisory does not appear to be coextensive with *Miranda* warnings.

No. 19-20286

**2.**

The Sixth Amendment status of Form I-213s is a question of first impression in this Circuit. However, two of our sister circuits have addressed the question, and we agree with them that I-213s are not testimonial. Their reasoning is instructive. In *United States v. Caraballo*, the defendant was convicted of alien smuggling after a marine patrol officer discovered eleven undocumented immigrants on board his fishing boat.[36] Immigration agents interviewed the aliens and recorded their "routine biographical information" on I-213s.[37] At trial, the district court admitted the first page of each I-213 over Caraballo's objection "to demonstrate that the aliens found on Caraballo's boat were deportable and inadmissible."[38]

The Eleventh Circuit rejected Caraballo's Confrontation Clause challenge. The court reasoned that the forms were not testimonial because they contained only "basic biographical information," such as name, birthplace and birthdate, and citizenship, "gathered . . . from the aliens in the normal course of administrative processing."[39] The Eleventh Circuit concluded that "[t]he I–213 form is primarily used as a record . . . for the purpose of tracking the entry of aliens," and it emphasized that "[t]he Supreme Court has instructed us to look only at the *primary* purpose of . . . questioning in determining whether the information elicited is testimonial."[40] Thus, although an I-213 might eventually be used in a criminal prosecution, that "incidental or secondary use" of the form "is of little moment" in the constitutional analysis.[41]

---

[36] 595 F.3d 1214, 1218–20 (11th Cir. 2010).
[37] *Id.* at 1218.
[38] *Id.* at 1226.
[39] *Id.* at 1228.
[40] *Id.* at 1229 (citing *Davis v. Washington*, 547 U.S. 813, 828, 830 (2006)).
[41] *Id.*

11

The Eleventh Circuit has repeatedly affirmed *Caraballo*'s Sixth Amendment holding,[42] and the Ninth Circuit reached the same conclusion several years later in *United States v. Torralba-Mendia*.[43] Like Caraballo, Torralba-Mendia was convicted of alien smuggling after a trial at which the Government introduced the I-213s of migrants who had been detained during the investigation.[44] The forms "contained the migrants' photos, fingerprints, physical characteristics," and information about the subsequent disposition of their cases, but "[t]he government redacted the agent's narrative detailing how [they] were apprehended, and all other statements made by the detainee."[45]

The Ninth Circuit concluded that I-213s are nontestimonial because they are "routinely completed by Customs and Border Patrol agents in the course of their non-adversarial duties," not "in anticipation of litigation."[46] After all, "[a]gents complete I–213 forms" for all aliens suspected of being present without authorization, "regardless of whether the government decides to prosecute [them] criminally."[47] "As with other evidence in an alien's A-file," the Ninth Circuit concluded, I-213s are nontestimonial because they "are prepared for administrative purposes, not as evidence in a later trial."[48]

In addition, although this Court has not addressed I-213s, we have decided Confrontation Clause challenges to several other A-file documents, and those cases provide useful points of comparison. In *United States v. Valdez-Maltos*, we held that warrants of removal (officially titled Form I-205s) are

---

[42] *See, e.g.*, *United States v. Chkuaseli*, 732 F. App'x 747, 757 (11th Cir. 2018) (unpublished) (per curiam); *United States v. Watson*, 611 F. App'x 647, 658 (11th Cir. 2015) (unpublished); *United States v. Rivera-Soto*, 451 F. App'x 806, 808 (11th Cir. 2011) (unpublished) (per curiam).

[43] 784 F.3d 652 (9th Cir. 2015).

[44] *Id.* at 658.

[45] *Id.*

[46] *Id.* at 666.

[47] *Id.*

[48] *Id.*

nontestimonial[49]—a holding we reaffirmed in 2018.[50] Warrants of removal contain an alien's name, photograph, and thumbprints and are "filled out by the deporting officer" who also "sign[s] the warrant as having witnessed the departure" of the alien.[51] We reasoned that warrants are "reliable and admissible because the official preparing the warrant had no motivation to do anything other than 'mechanically register an unambiguous factual matter'"— namely, that the alien in question was successfully deported.[52] Moreover, warrants of removal "must be issued" in all "cases resulting in a final order of removal . . . to memorialize an alien's departure—not specifically or primarily to prove facts in a hypothetical future criminal prosecution."[53] We have likewise held that DHS computer printouts showing the date and time of aliens' prior deportations are nontestimonial,[54] as are removal orders issued by an immigration judge.[55]

The reasoning of these cases supports the Government's contention that I-213s are nontestimonial. Warrants of removal, removal orders, and records of prior deportations contain much of the same biographical information as I-213s, and, like I-213s, they provide compelling evidence of alienage. By contrast, this Court has adjudged only one type of A-file document to be testimonial: Certificates of Nonexistence of Record ("CNR").[56] In an illegal-reentry case, a CNR is prepared by a DHS official who has searched agency

---

[49] 443 F.3d 910, 911 (5th Cir. 2006) (per curiam).

[50] *United States v. Garcia*, 887 F.3d 205, 213 (5th Cir. 2018).

[51] *United States v. Quezada*, 754 F.2d 1190, 1191 (5th Cir. 1985).

[52] *Valdez-Maltos*, 443 F.3d at 911 (quoting *Quezada*, 754 F.2d at 1194).

[53] *Garcia*, 887 F.3d at 213.

[54] *United States v. Lopez-Moreno*, 420 F.3d 420, 436 (5th Cir. 2005).

[55] *United States v. Becerra-Valadez*, 448 F. App'x 457, 462 (5th Cir. 2011) (unpublished).

[56] Additionally, in *United States v. Duron-Caldera*, we remanded for a new trial where the Government failed to carry its burden of showing that a relative's affidavit included in the defendant's A-file was nontestimonial, and the evidence available to the Court was "inconclusive." 737 F.3d 988, 993 (5th Cir. 2013). Contrary to Noria's assertion, we did not hold that the affidavit was in fact testimonial. *Id.* at 994.

records as proof that the alien-defendant has not applied for or received permission to reenter the United States.[57] In *United States v. Martinez-Rios*, we held that admitting a CNR without making the preparer of the certificate available for cross-examination is a violation of the defendant's confrontation right.[58] Relying on the Supreme Court's then-recent opinion in *Melendez-Diaz*,[59] we reasoned that CNRs are testimonial because they "are not routinely produced in the course of government business but instead are exclusively generated for use at trial."[60]

Here, it is uncontested that Form I-213s *are* routinely produced by DHS and are not generated solely for use at trial. Moreover, there is no indication that the specific Form I-213s introduced at Noria's trial are untrustworthy or unusually litigation-focused; by all accounts, they are standard I-213s created contemporaneously with each of Noria's interviews by immigration agents.[61] No doubt, the biographical portion of an I-213 can be helpful to the Government in a later criminal prosecution. However, we agree with the Ninth and Eleventh Circuits that the forms' primary purpose is administrative, not

---

[57] *See United States v. Luna-Bolanos*, 369 F. App'x 947, 948–49 (10th Cir. 2010) (unpublished) (describing the process of generating a CNR). It is undisputed that the CNR admitted in Noria's case was properly introduced through the testimony of USCIS witness Christine Pool.

[58] 595 F.3d 581, 586 (5th Cir. 2010).

[59] *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 323 (2009) (reasoning that where the prosecution seeks "to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it," the certificate must be testimonial because it "would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched").

[60] *Martinez-Rios*, 595 F.3d at 586.

[61] *See, e.g.*, *United States v. Hernandez-Hernandez*, No. 2:15-cr-59-FtM-38MRM, 2016 WL 836687, at *2 (M.D. Fla. Mar. 4, 2016) (unpublished) (departing from *Caraballo* and excluding I-213s from an alien-smuggling trial because they "were created only weeks prior to trial and well after the underlying facts," leading the district court to conclude "that these forms were prepared for litigation and not as part of the 'routine' procedures accompanying the aliens' apprehension"); *see also Dong-Chen v. Mukasey*, 278 F. App'x 49, 51 (2d Cir. 2008) (unpublished) (per curiam) (noting that an I-213 is particularly dependable where the alien "does not argue that [it] is less reliable than I-213s are as a general matter").

investigative or prosecutorial. After all, immigration agents prepare an I-213 every time they encounter an alien suspected of being removable, regardless of whether that alien is ever criminally prosecuted or civilly removed.[62] The forms are then stored in the regular course of DHS business. As the Government explained at oral argument, I-213s serve primarily as administrative records used to track undocumented entries, not as evidence in criminal trials. We therefore join the so-far-unanimous judgment of our sister circuits that the portions of the Form I-213s admitted in this case were nontestimonial. We have no occasion to consider the Sixth Amendment status of the forms' remaining pages, which were not admitted at trial.

## B.

Noria argues that even if his I-213s do not offend the Confrontation Clause, they are inadmissible hearsay. He contends that the I-213s do not fall within Federal Rule of Evidence 803(8)'s public-records exception "for the same reasons [they] should be considered testimonial under the Sixth Amendment"—namely, that they are not routine administrative records but investigative reports made in furtherance of a criminal prosecution. In fact, Noria argues, the I-213s are expressly barred by Rule 803(8)(A)(ii) as records of "matter[s] observed by law-enforcement personnel" in a criminal case. The Government's opposition also echoes its Sixth Amendment argument. The

---

[62] *See Caraballo*, 595 F.3d at 1228. Noria accuses the Government of mistakenly relying on *Caraballo* for the proposition that all foreign entrants must complete Form I-213s. That would of course be inaccurate; I-213s are created only for aliens suspected of being removable. *See Bauge v. I.N.S.*, 7 F.3d 1540, 1543 n.2 (10th Cir. 1993). However, that is not the proposition the Government makes. It asserts only, and correctly, that I-213s "memoralize[] routine biographical *information* required of every foreign entrant." This is consistent with *Caraballo*'s observation that "the basic biographical information recorded on the I-213 form is routinely requested from every alien entering the United States, and the form itself is filled out for anyone entering the United States *without proper immigration papers.*" 595 F.3d at 1228 (emphasis added). In other words, the information recorded on an I-213 is requested from all entrants, but not necessarily in the form of an I-213; for example, the same basic biographical questions might instead appear on a visa application.

Government contends that I-213s are generated "for administrative purposes, as opposed to anticipation of trial," and so are not subject to Rule 803(8)(A)(ii)'s limited bar against law enforcement reports.

Rule 803(8)(A)(ii) authorizes the admission of public records of "a matter observed while under a legal duty to report, *but not including*, in a criminal case, a matter observed by law-enforcement personnel." This exception to the exception is based "on the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime."[63] As the Rule's legislative history explains, such observations "are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases."[64]

It is undisputed that the immigration agents who interviewed Noria were law-enforcement officers within the meaning of Rule 803(8), and that they created the I-213s while under a legal duty to report their observations. "Thus, a literal application of the rule would exclude this evidence."[65] However, "courts have not inflexibly applied this proscription to exclude all law enforcement records in criminal cases."[66] We have long recognized "a distinction . . . between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation."[67] For three reasons, Noria's I-213s fall within the former, admissible category.

---

[63] *United States v. Quezada*, 754 F.2d 1190, 1193 (5th Cir. 1985)

[64] S. REP. NO. 93-1277, at 7064 (1974).

[65] *United States v. Puente*, 826 F.2d 1415, 1417 (5th Cir. 1987).

[66] *Id.*

[67] *Quezada*, 754 F.2d at 1194.

First, although this Court has not decided whether Form I-213s are admissible under Rule 803(8) in criminal prosecutions, we have long accepted that they are admissible in civil removal proceedings. Of course, the Federal Rules of Evidence do not apply in immigration court.[68] Even so, panels considering immigration cases often reason by analogy to the Federal Rules, and their discussions contain persuasive analysis.[69] We have repeatedly relied on Rule 803(8)'s public-records exception to affirm the admission of Form I-213s. Last year, for example, we reasoned that I-213s were properly admitted in immigration court because a "Form I-213 is a public record made by public officials in the ordinary course of their duties"—not in the antagonistic setting of a criminal investigation—"and accordingly evidences strong indicia of reliability."[70] In an earlier case, we expressly noted that I-213s "come within the public records exception to the hearsay rule, not that the hearsay rules apply to deportation proceedings in the first place."[71]

Second, the other two circuits to consider the question have held I-213s admissible under Rule 803(8). As Noria notes, his hearsay challenge is governed largely by the same considerations as his Confrontation Clause challenge. Thus, both parties rely heavily on the same two out-of-circuit cases described above in the Confrontation Clause discussion: *United States v. Caraballo*[72] from the Eleventh Circuit and *United States v. Torralba-Mendia*[73] from the Ninth. Both those courts held that I-213s do not implicate the

---

[68] *Bustos-Torres v. I.N.S.*, 898 F.2d 1053, 1055 (5th Cir. 1990). Instead, "[t]he test for admissibility of evidence in a deportation proceeding is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law." *Id.*; *see Olabanji v. I.N.S.*, 973 F.2d 1232, 1234 (5th Cir. 1992).

[69] *See Bouchikhi v. Holder*, 676 F.3d 173, 180 (5th Cir. 2012).

[70] *Zuniga-Perez v. Sessions*, 897 F.3d 114, 119 n.1 (5th Cir. 2018) (internal alterations and quotation marks omitted) (quoting *Felzcerek v. I.N.S.*, 75 F.3d 112, 116 (2d Cir. 1996)).

[71] *Renteria-Gonzalez v. I.N.S.*, 322 F.3d 804, 817 n.16 (5th Cir. 2002).

[72] 595 F.3d 1214 (11th Cir. 2010).

[73] 784 F.3d 652 (9th Cir. 2015).

concerns motivating Rule 803(8)(A)(ii) because they are "routinely completed by Customs and Border Patrol agents in the course of their non-adversarial duties, not in the course of preparing for a criminal prosecution."[74] As the Ninth Circuit put it, I-213s contain only "ministerial, objective observation[s]."[75]

Finally, I-213s are alike in material respects to other immigration documents that are routinely admitted under Rule 803(8). Immigration detainers, for example, contain the same identifying information—including country of citizenship—that Noria challenges here, and they are prepared as part of federal immigration authorities' law-enforcement efforts after an alien has been identified as removable. Much the same can be said of warrants of removal, removal orders, and reinstatements of removal orders. In particular, executed warrants of removal directly attest to an event "observed" by a law-enforcement officer—namely, the alien's removal—and yet we have long recognized that they are not subject to Rule 803(8)(A)(ii)'s law-enforcement exclusion.[76]

The fact that an I-213 may be used to support a later criminal prosecution does not change the essentially ministerial circumstances of its creation; after all, many aliens for whom I-213s are created are never prosecuted or placed in removal proceedings. Moreover, many types of immigration documents, including detainers and warrants, are generated by law-enforcement officers after an alien has been suspected or convicted of committing a crime. To some extent, all these documents could be characterized as investigative for purposes of Rule 803(8)(A)(ii)—and yet they

---

[74] *Caraballo*, 595 F.3d at 1226; *see also Torralba-Mendia*, 784 F.3d at 665 ("[T]he record of a deportable alien . . . is part of an alien's A–File, filled out and kept by the Department of Homeland Security in its regular course of business.").

[75] *Torralba-Mendia*, 784 F.3d at 665.

[76] *See United States v. Garcia*, 887 F.3d 205, 212 (5th Cir. 2018) ("Under consistent circuit precedent, the warrant of removal was properly admitted under Federal Rule of Evidence 803(8)—the public records exception.").

are not. For these reasons, the admitted portions of Noria's I-213s were admissible under Rule 803(8)'s public-records exception to the rule against hearsay. Again, we emphasize that our holding is confined to the initial redacted page of the form, which records only biographical and administrative-processing data.

## IV.

For the foregoing reasons, we hold that the admitted portions of Noria's Form I-213s offended neither the Confrontation Clause nor the Federal Rules of Evidence. Noria's conviction and sentence are affirmed.