# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 18, 2023

Lyle W. Cayce
Clerk

———————————

No. 21-50986

———————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Nicole Elizabeth Foreman,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CR-103-2

———————————————————————

Before Clement, Elrod, and Willett, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Nicole Foreman was convicted of transporting illegal aliens and conspiracy to transport illegal aliens. But the government used inadmissible evidence to prove that the person being transported was in the United States unlawfully. Because this is an element of the substantive offense but not the conspiracy charge, we VACATE Foreman's conviction for transporting illegal aliens but AFFIRM Foreman's conviction for conspiracy to transport illegal aliens. Therefore, we REMAND for resentencing.

No. 21-50986

## I.

On January 27, 2021, a deputy for the Culberson County Sheriff's Office initiated a traffic stop of a white Pontiac that appeared "to be riding low" with one of its license plate lights out. The deputy found nine men, who appeared to be of Latin American descent, smashed into the back of the small SUV. A man named Ira Cannon was driving the vehicle, and a woman named Nicole Foreman was in the passenger seat. The deputy called U.S. Border Patrol, which took over the investigation.

Border Patrol determined that Cannon was the leader of the human-smuggling operation, Foreman assisted him, and Foreman's husband was the vehicle's registered owner. A Border Patrol agent interviewed the nine smuggled men and determined they were all Mexican nationals. Border Patrol then passed the case to investigators with the U.S. Department of Homeland Security.

DHS investigators interviewed Cannon and Foreman. Foreman cooperated, waived her *Miranda* rights, and allowed officers to search her phone. During the interview, Foreman immediately admitted to having illegal aliens in her SUV. Explaining her side of the story, Foreman, a married woman with kids, told the agents that she agreed to help her boyfriend, Cannon, "make a trip" in exchange for some money. But Foreman claimed she was unsure how she would make money by "pick[ing] up some people," even though, as an agent explained at trial, that phrase is commonly used as code for human smuggling. She also said that she became nervous about getting caught once she realized that the people they would be transporting were "freaking Mexicans." Despite these equivocations, Foreman ultimately admitted that her cut of the scheme was $7,000 for supplying the vehicle and that the money would come from the smuggled aliens' families. Foreman's texts to her husband also confirm she was "trying to get [them] a

2

little bit of money" by helping Cannon and that once she got caught, she realized she was "probably about to go to jail."

Cannon's telling was substantially similar to Foreman's. However, he said Foreman had requested to participate in transporting illegal aliens a month or two before their arrests. And he testified that Foreman knew from the beginning that going to "pick up people" meant going to "transport . . . illegal aliens." In short, according to Cannon, Foreman knew what she was doing from the start—smuggling people illegally present in the United States.

Ultimately, a jury convicted Foreman of transportation of illegal aliens for financial gain and conspiracy to transport illegal aliens, violations of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(I), respectively. The district court sentenced Foreman to forty-six months' imprisonment on each charge to run concurrently.

During the trial, the government introduced a DHS Investigation Form G-166F authored by the Border Patrol agent who conducted the initial investigation. While the agent who authored the report did not testify, his supervisor, Ramon Saenz, did. Saenz testified that a G-166F was a document his agents generated in all alien-smuggling cases and that it included the citizenship of all people involved in a case. After laying this foundation, the government moved to have the report placed into evidence and a redacted version published to the jury. Foreman objected vehemently at trial, arguing the introduction of the G-166F into evidence violated the confrontation clause of the Sixth Amendment, the hearsay prohibition of the Federal Rules of Evidence, and the due process clause of the Fifth Amendment.[1] The court

---

[1] Foreman has abandoned her due process argument on appeal; therefore, it is forfeited. *Coleman v. United States*, 912 F.3d 824, 829 (5th Cir. 2019) (explaining that failure to adequately brief an issue on appeal forfeits that argument).

admitted the G-166F into evidence over this objection, and eventually granted Foreman a "running objection" to the government's use of the document.

The G-166F was one of only two pieces of evidence that sought to prove that the men in Foreman's vehicle were illegal aliens. The other was Saenz's testimony that he personally knew that the men in Foreman's SUV had been deported to Mexico. The aliens themselves never testified, nor did the Border Patrol agents who interviewed them. The government did not provide the jury any official documentation concerning the individuals' nationalities, such as passports or deportation papers.

## II.

Foreman challenges the district court's ruling admitting the G-166F into evidence based on the Federal Rules of Evidence and the Sixth Amendment. We address each argument in turn.

## A.

We review the district court's hearsay ruling for abuse of discretion. *United States v. Evans*, 892 F.3d 692, 714 (5th Cir. 2018). If we find an error, we apply a harmless error analysis. *Id.* In an evidentiary ruling context, we consider whether the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quotation marks and citation omitted).

The Federal Rules of Evidence generally forbid the admission of hearsay, *i.e.*, an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 802; Fed. R. Evid. 801(a), (c); *United States v. Demmitt*, 706 F.3d 665, 671 (5th Cir. 2013). There is an exception to the rule against hearsay for business records. Fed. R. Evid. 803(6). The government does not seem to dispute that the biographical statements in the

No. 21-50986

document, specifically the nationality of the people in Foreman's SUV, are hearsay. Instead, the government argues that Border Patrol uses the G-166F form in its ordinary course of business and thus it falls into the business record exception to the hearsay rule. The district court agreed with this argument, admitting the report as a "business records affidavit of the United States Border Patrol."

The G-166F in question presents a double hearsay problem. *See* FED. R. EVID. 805. First, as the government acknowledges, the investigation report is not an affidavit nor otherwise sworn to. So, the document has the out-of-court statements of the men in Foreman's vehicle *and* the G-166F's author, who did not testify. To get around this issue, the government argues that, although the report is not "strictly a business record," it is analogous to immigration documents that this court has previously allowed as evidence.

The government relies on *United States v. Noria*, 945 F.3d 847 (5th Cir. 2019). In *Noria*, we held that a different form, the I-213 immigration form, could be used as evidence in a criminal proceeding because of its ministerial nature. *Id.* at 860. But that holding was based on the *public records* exception to the hearsay rule—a different exception from the business records exception and one the government explicitly *did not* argue before the district court. The government therefore forfeited any argument concerning the public records exception to the hearsay rule. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal . . . .").

Such an argument would be of questionable validity anyway. The advisory committee's note to the public records exception explains that Congress specifically "excluded from the [public records] hearsay exception reports containing matters observed by police officers and other law

No. 21-50986

enforcement personnel in criminal cases." Fed. R. Evid. 803(8) advisory committee's note to 1974 enactment; *see also id.* at note to 1972 proposed rules ("Police reports have generally been excluded [from evidence] except to the extent to which they incorporate firsthand observations of [a testifying] officer").

Regarding the government's argument that the business records exception applies, the G-166F is precisely the sort of criminal investigation report the Federal Rules of Evidence prohibit. The advisory committee's note to the business records exception says:

> If . . . the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. An illustration is the *police report* incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not.

Fed. R. Evid. 803(6) advisory committee's note to 1972 proposed rule (emphasis added).

At bottom, an alien-smuggling investigation report is not "essentially ministerial" as this court found the I-213 to be in *Noria*. 945 F.3d at 860. Instead, it is a criminal investigation report—the sort of document the Federal Rules of Evidence, and even the *Noria* decision itself, explicitly note are inadmissible hearsay. *See* Fed. R. Evid. 803(6) advisory committee's note to 1972 proposed rules; *Noria*, 945 F.3d at 852–53 ("[T]he Court distinguishes between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation. The former are admissible, while the latter are not." (citation and quotation marks omitted)).

6

We therefore find that the district court abused its discretion by admitting the G-166F into evidence under the Federal Rules of Evidence.

**B.**

Foreman's Confrontation Clause objection is reviewed "*de novo*, subject to harmless error analysis." *United States v. Duron-Caldera*, 737 F.3d 988, 992 (5th Cir. 2013). To that end, "the government bears the burden of defeating a properly raised Confrontation Clause objection by establishing that its evidence is nontestimonial." *Id.* at 993 (alteration adopted) (citation omitted). "A defendant deprived of the right to confront witnesses against [her] is entitled to a new trial unless the government proves beyond a reasonable doubt that the error was harmless; that is, that there was no reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 996 (alteration adopted) (quotation marks and citation omitted).

Criminal defendants have the right "to be confronted with the witnesses against [them]." U.S. Const. amend. VI. A district court must accordingly ensure that a defendant can challenge her accusers "in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). We ask three questions to determine whether an evidentiary ruling violated the Sixth Amendment: "*First*, did the evidence introduce a testimonial statement by a nontestifying witness? *Second*, was any such statement offered to prove the truth of the matter asserted? *Third*, was the nontestifying witness available to testify, *or* was the defendant deprived of an opportunity to cross-examine him?" *United States v. Hamann*, 33 F.4th 759, 767 (5th Cir. 2022) (citation omitted) (emphasis in original). Answering "yes" to these three questions establishes a Confrontation Clause violation, which requires the vacatur of the conviction unless the government shows that the error was harmless. *Id.* As discussed above in our hearsay analysis,

the government concedes the second and third questions. So, we address only the parties' dispute on whether the information in the G-166F was testimonial.

"A statement is testimonial if its primary purpose is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (quotation marks and citation omitted). Foreman argues that the information in the G-166F fits this description. As she points out, G-166Fs are used to investigate "alien smuggling," which is a crime. 8 U.S.C. § 1324(a)(1)(A)(ii). Indeed, the G-166F identifies Foreman as an "associate" in the "alien smuggling case." Central to the debate between the parties—whether the government can prove alienage with a G-166F—Foreman argues that the biographical information in the form also fits the criteria of information "relevant to [a] later criminal prosecution" and should be seen as testimonial information that requires cross-examination pursuant to the Sixth Amendment. As Foreman concludes, "[t]here is no 'biographical information' exception to the Sixth Amendment right to confrontation."

The government counters that "limited information about the aliens' place of birth in the G-166[F] form was not testimonial" because this court allowed such information to enter the evidentiary record through I-213 forms in *Noria*. But for similar reasons to why the G-116F fails to satisfy the business records exception, it also fails as an analogy to the I-213 evaluated in *Noria*. In *Noria*, our court explained that the Form I-213 at issue was nontestimonial because its "primary purpose is administrative, not investigative or prosecutorial." 945 F.3d at 857. Here, the Form G-166F is, by its very title, investigative. And the Supreme Court has said that statements that investigating officers gather during their investigation are testimonial and require the right to confrontation. *See Davis v. Washington*, 547 U.S. 813, 829–31 (2006).

No. 21-50986

All in all, it is the government's burden to establish that using the challenged investigative report was constitutional. *See Duron-Caldera*, 737 F.3d at 993. The government has not met that burden here. Therefore, admitting the G-166F into evidence violated Foreman's Sixth Amendment rights. [2]

## C.

Because the admission of the G-166F form into evidence violated the Federal Rules of Evidence and the Confrontation Clause, we must vacate the conviction unless the error was harmless. *Evans*, 892 F.3d at 714; *Duron-Caldera*, 737 F.3d at 996. To test this, we examine the error's effects instead of merely "ask[ing] whether the evidence remaining after [the] excision of the tainted evidence was sufficient to convict the defendant." *Hamann*, 33 F.4th at 771 (quotation marks and citation omitted). The primary consideration is whether prosecutors emphasized the tainted evidence to the jury and the significance of the evidence to the government's case. *See id.* at 771–72. "If the government relied on the violative testimony in its closing argument, we are more likely to conclude that the error was harmful." *Id.* at 771 (citation omitted). But "[i]f the government makes only fleeting references to the unconstitutional evidence, we are less likely to find harm." *Id.* (quotation marks and citation omitted). Finally, if the unconstitutional evidence speaks to a contested element of the offense, we are more likely to find that the defendant suffered harm from the error. *Id.* at 772.

---

[2] In a non-precedential opinion, a panel of this court found that the use of a G-166F form to prove a transportation-of-illegal-aliens charge did not violate the Confrontation Clause. *United States v. Guia-Lopez*, No. 22-50234, 2023 WL 5236764 (5th Cir. Aug. 15, 2023). But in *Guia-Lopez*, the agent who authored the report testified at trial. *Id.* at *11. And the defendant had failed to challenge the admission of the document during his trial, so it was reviewed under a clear error standard. *Id.* Thus, the *Guia-Lopez* decision does not bear on this appeal.

As the district court informed the jury, the elements of the crime of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) are that: (1) an alien was in the country illegally; (2) the defendant knew or recklessly disregarded the fact that the alien was illegally present in the United States; and (3) the defendant transported the alien with the intent to further the alien's unlawful presence. Here, Foreman challenges the government's use of the biographical information in the G-166F to prove the first element.

Foreman argues that the government's use of the G-166F in its closing argument shows reliance on this evidence, not just fleeting reference. She says this evidence harmed her because the jury reasonably used the citizenship information therein to conclude that the men in Foreman's SUV were in the United States unlawfully. So, says Foreman, the panel should vacate her conviction on the first count of the indictment. For its part, the government accepts that it used the investigation report as evidence of illegal alienage but contends that it was cumulative of other evidence in the record.

The government is correct that there is plenty of evidence in the record that Foreman *believed* she was transporting illegal aliens. However, this evidence speaks to the second element of the crime—whether she knew or recklessly disregarded the fact that the people in her vehicle were illegal aliens. There were only two pieces of evidence that the people in Foreman's truck were actually illegal migrants from Mexico: the G-116F and Saenz's statement that he personally knew the government deported those men.

But Saenz himself did not speak personally to the individuals about their alienage. And regardless, the question is not whether Saenz's personal knowledge would have been enough for a jury to conclude that the men in Foreman's SUV were indeed foreigners in the United States unlawfully. *Hamann*, 33 F.4th at 771 ("[W]e do not ask whether the evidence remaining after excision of the tainted evidence was sufficient to convict the

defendant." (quotation marks and citation omitted)). Instead, the government must show that there was no reasonable possibility that the information in the G-116F contributed to the jury's verdict. *See Duron-Caldera*, 737 F.3d at 996. Here, the G-116F was one of two pieces of evidence relied on by the government to prove illegal alienage, a required element of the crime of transporting illegal aliens. Accordingly, there is a reasonable possibility that the jury relied on the G-116F in its decision to convict Foreman. The district court's decision to allow the G-166F into evidence thus caused Foreman harm at trial. We therefore VACATE her conviction on the first count in the indictment and REMAND for resentencing.

### III.

Foreman was also convicted of conspiracy to transport illegal aliens. To convict someone under 8 U.S.C. § 1324(a)(1)(A)(v)(I), the government must show that: (1) two or more people directly or indirectly agreed to transport an alien within the United States; (2) the defendant knew of the unlawful purpose of the agreement; and (3) the defendant joined the agreement willfully.

The government correctly points out that a conspiracy to transport illegal aliens only requires an agreement to move migrants in the United States illegally, not that the people so moved are actually unlawful migrants. So, the government believes that the unconstitutional information found in the G-166F is not relevant to the second charge. Foreman acknowledges that alienage is not an element of conspiracy to transport illegal migrants. But she counters in her reply brief that there is a reasonable possibility that the information in the G-116F regarding proof of alienage influenced the jury's verdict when it determined that Foreman entered into "an agreement to transport *an alien* within the United States." Based on the applicable standard of review, she concludes that this is enough to find harmful error.

No. 21-50986

We agree with the government. Unconstitutional evidence may be harmful in the context of a related conspiracy charge, but only where the unconstitutional evidence speaks to a contested element of the conspiracy, or where the conspiracy and substantive offense cannot be distinguished. *Hamann*, 33 F.4th at 772–73. Here, the crimes are distinguishable. The evidence shows that the two charges stemmed from separate events, with Cannon and Foreman conspiring with each other to transport illegal aliens up to two months before they attempted the crime. And the evidence of alienage contained in the G-166F was not used to demonstrate that Foreman and Cannon agreed to transport aliens. For that, the government relied on Foreman's own filmed comments admitting to her agreement, and Cannon's testimony to the same.[3] To sum it up, whether the men in Foreman's car were actually illegal aliens is not relevant to any element in the conspiracy to transport illegal aliens charge. We AFFIRM Foreman's conviction for conspiracy.

---

[3] Although the parties do not discuss it, the G-166F presented to the jury lists Cannon as a "PRINCIPAL" and Foreman as an "ASSOCIATE." While it is possible that a jury could have considered this portion of the report when it determined that Cannon and Foreman made an agreement to transport illegal immigrants, Foreman failed to raise this issue on appeal, forfeiting the argument. *See United States v. Gonzalez*, 62 F.4th 954, 960 n.5 (5th Cir. 2023) ("By failing to adequately raise those arguments on appeal, he forfeited them.").