# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2025

Lyle W. Cayce
Clerk

No. 24-10155

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Joshua Devon Barrow,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:23-CR-38-1

_____

Before Dennis, Oldham, and Douglas, *Circuit Judges*.[*]

Per Curiam:[†]

A federal grand jury indicted Joshua Devon Barrow for unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Barrow moved to dismiss the indictment on the ground that § 922(g)(1) is unconstitutional. The district court denied the motion and sentenced Barrow to seventy-two months of imprisonment and three years

_____

[*] Judge Oldham concurs in the judgment.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

of supervised release. Because Barrow's arguments on appeal are foreclosed by our precedent, we AFFIRM.

I

In March 2023, Amarillo Police Department officers responded to reports of an unconscious driver stopped at an intersection in Amarillo, Texas. Officers searched the vehicle and located a half-empty bottle of alcohol and a loaded Ruger LCP .38 caliber semi-automatic pistol with an extended magazine. Emergency medical personnel transported the vehicle's occupant to a local hospital, where they located an identification card bearing the name of Donald Gerad Clemons on his person. The man was discharged from the hospital the following day under Clemons's name.

Officers subsequently learned that the unconscious driver was Barrow. Barrow has a lengthy criminal history, including three felony convictions. The first is a 2003 Texas state-court conviction for possession of a controlled substance. Almost eight years later, in 2011, a federal district court in Texas convicted Barrow of conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base. Lastly, in 2013, Barrow pleaded guilty to federal bribery of a public official, an offense he committed while incarcerated for the cocaine-trafficking conspiracy conviction. Barrow began serving concurrent three-year terms of supervised release for his two federal sentences in July 2022. The Government alleges that Barrow committed multiple violations of the conditions of his supervised release, resulting in the issuance of federal supervised release violator warrants in both federal cases.

Several weeks after the incident at the Amarillo intersection, Houston Police Department officers stopped Barrow after they observed his vehicle at a gas station and, upon running the license plate, determined that there were several outstanding warrants connected to the vehicle and Barrow. Officers

recovered from Barrow's vehicle a Taurus Model G2C 9mm handgun with a loaded magazine and a round in the chamber. Officers confirmed Barrow's warrants for his supervised-release violations and arrested him.

A federal grand jury returned a one-count indictment charging Barrow with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Barrow moved to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment, both on its face and as applied to him, and exceeds Congress's power under the Commerce Clause. The district court denied the motion but did not explicitly address Barrow's as-applied challenge. Barrow then pleaded guilty to the indictment, and the district court sentenced him to seventy-two months of imprisonment followed by three years of supervised release. Barrow timely appealed.

On appeal, Barrow re-urges the arguments raised in his motion to dismiss. He concedes, however, that our court's precedent forecloses his Second Amendment facial challenge and Commerce Clause challenge, and that he raises these issues only to preserve them for possible future review. *See United States v. Diaz*, 116 F.4th 458, 472 (5th Cir. 2024) (foreclosing facial challenge to § 922(g)(1)); *id.* at 462 (foreclosing Commerce Clause challenge to § 922(g)(1) (citing *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013))). Accordingly, we need only consider Barrow's argument that § 922(g)(1) violates the Second Amendment as applied to him, which we review de novo. *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014) (citing *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009)).

## II

The Second Amendment guarantees that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. Const. amend. II. But that right "is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). "[H]istory and tradition support Congress's power to strip certain

groups of that right." *Diaz*, 116 F.4th at 466 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (BARRETT, J., dissenting)), *petition for cert. filed*, (U.S. Feb. 24, 2025) (No. 24-6625).

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court announced a two-step framework for analyzing whether a particular firearm regulation is consistent with the Second Amendment. *Id.* at 17. First, the Second Amendment's plain text must cover the defendant's conduct, in which case the Constitution presumptively protects that conduct. *Id.* at 24. Second, if the defendant's actions are covered, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961)).

As to the first inquiry, Barrow is decidedly among "the people" protected by the Second Amendment, *Diaz*, 116 F.4th at 466, and "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)," *id.* at 467 (citing *United States v. Rahimi*, 602 U.S. 680, 708 (2024) (GORSUCH, J., concurring)). Thus, the burden now rests with the Government to show that regulating Barrow's possession of a firearm is "consistent with the Nation's historical tradition" of disarming someone with a criminal history analogous to his. *Bruen*, 597 U.S. at 24; *accord Diaz*, 116 F.4th at 467.

The Government contends, *inter alia*, that historical tradition supports depriving Barrow of firearms at the time of his § 922(g)(1) arrest

No. 24-10155

because he committed the instant offense while on supervised release. We review this argument de novo.[1]

Two recent decisions of our court control. *See United States v. Giglio*, 126 F.4th 1039, 1043–46 (5th Cir. 2025); *United States v. Contreras*, 125 F.4th 725, 732–33 (5th Cir. 2025). In both, we held that there is a history and tradition supporting the disarmament of those who continue to serve sentences for felony convictions. *See Giglio*, 126 F.4th at 1043–46; *Contreras*, 125 F.4th at 732–33. As explained in *Giglio*, "disarmament was a typical condition of all manner of sentences," and this historical tradition "is a match for both the 'why' and the 'how' of disarming felons who are still serving out sentences." 126 F.4th at 1044. For instance, Pennsylvania's Founding-era forfeiture law "burdened the right to bear arms for the same reasons that we now burden the rights of convicts on supervised release: to deter criminal conduct, protect the public, and facilitate the convict's rehabilitation." *Id.* (quoting *United States v. Moore*, 111 F.4th 266, 269–70 (3d Cir. 2024)). "And the law imposed that burden in a substantially similar manner"—*i.e.*, by disarming convicts during their sentences. *Id.*; *see also Contreras*, 125 F.4th at 732 ("This historical practice of disarming a convict during his sentence is like temporarily disarming a convict on supervised release." (citation modified)). Massachusetts, Virginia, and Kentucky had similar forfeiture laws as well. 126 F.4th at 1043. These laws, the *Giglio* court

---

[1] True enough, the Government raises this argument for the first time on appeal, and ordinarily that would result in forfeiture. *See United States v. Foreman*, 84 F.4th 615, 618–19 (5th Cir. 2023). But in the context of as-applied challenges to § 922(g)(1), we have adopted a more lenient standard. *See Howard*, 766 F.3d at 419; *United States v. Bullock*, 123 F.4th 183, 184–85 (5th Cir. 2024) (per curiam). "Because the Second Amendment analysis is a legal inquiry into the text and history related to the relevant regulation, the [G]overnment may provide additional legal support for its arguments on appeal." *Bullock*, 123 F.4th at 185 (first citing *Bruen*, 597 U.S. at 25 n.6; and then citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)).

reasoned, "establish a historical tradition wherein '[c]onvicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences.'" *Id.* at 1044 (alteration in original) (quoting *Moore*, 111 F.4th at 271).

Based on these historical analogues, we affirmed the constitutionality of § 922(g)(1) as applied to the defendants in *Giglio* and *Contreras*, each of whom were on supervised release serving felony sentences at the time of their § 922(g)(1) arrests. *See Giglio*, 126 F.4th at 1041, 1045; *Contreras*, 125 F.4th at 727–28, 732–33. The same is true here. Barrow was serving felony sentences on supervised release at the time he unlawfully possessed the firearm. *See Contreras*, 125 F.4th at 732 ("After all, the defendant receives a term of supervised release thanks to his initial offense, and it constitutes a part of the final sentence for his crime." (citation modified)). Thus, under our precedent, the Government was justified in depriving Barrow of firearms at the time of his § 922(g)(1) arrest.[2] *See id.* at 732–33; *Giglio*, 126 F.4th at 1043–46; *see also United States v. Moore*, No. 24-30053, 2025 WL 711119, at *4 (5th Cir. Mar. 5, 2025) (relying on *Contreras* and *Giglio* to reject as-applied challenge brought by defendant who was on probationary status at the time he was apprehended under § 922(g)(1)); *Moore*, 111 F.4th at 272 ("Consistent with our Nation's history and tradition of firearms regulation, we hold that convicts may be disarmed while serving their sentences on supervised release."); *United States v. Goins*, 118 F.4th 794, 801–02 (6th Cir. 2024) (reasoning that because "forfeiture of the estate, goods, or chattels

---

[2] We express no opinion today on whether Barrow's predicate felonies justify permanent disarmament for purposes of § 922(g)(1). Our holding is simply that, at the time of his felon-in-possession arrest, the Government could constitutionally disarm Barrow based on his supervised release status for prior felony convictions. *See Giglio*, 126 F.4th at 1045 ("The lynchpin of our analysis is that Giglio, at the time of his conviction, was serving a sentence for a prior conviction.").

upon conviction was common during the founding era," the government today can justifiably "disarm[ ] those on parole, probation, or supervised release"). Barrow's as-applied challenge fails.

### III

Accordingly, we AFFIRM the district court's judgment of conviction.